UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID BONIFACE, NISSANDÈRE MARTYR, AND JUDERS YSEMÉ, | * * * * |
| Plaintiffs, | * |
| v. | * Civil Action No. 17-cv-10477-ADB * |
| JEAN MOROSE VILIENA, | * * |
| Defendant. | * |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL

BURROUGHS, D.J.

David Boniface, Nissandère Martyr,[1] and Juders Ysemé (together, "Plaintiffs"), residents

of Les Irois, Haiti, allege that Jean Morose Viliena ("Defendant"), the former mayor of Les Irois,

committed human rights abuses in violation of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350,

and the Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992), 28

U.S.C. § 1350 (codified at note). [ECF No. 1 ("Complaint" or "Compl.")]. On August 31, 2018,

the Court granted in part and denied in part Defendant's motion to dismiss. [ECF No. 56]. Now

before the Court is Defendant's motion for reconsideration of the Court's motion to dismiss

order, or, in the alternative, a motion for certification of an interlocutory appeal. [ECF Nos. 59,

66]. For the reasons set forth below, Defendant's motion for reconsideration [ECF No. 66] is

---

[1] On August 31, 2018, the Court allowed Plaintiffs to substitute Nissandère Martyr as a party following the death of his father, Nissage Martyr, who had been a named plaintiff in this action. See [ECF No. 56].

DENIED, and Defendant's motion for the alternative relief of certification of an interlocutory appeal [ECF No. 59] is <u>GRANTED</u>.

## I.     BACKGROUND

### A.     August 31, 2018 Motion to Dismiss Order

The Court presumes familiarity with the underlying facts alleged in the Complaint that were summarized in the Court's memorandum and order granting in part and denying in part Defendant's motion to dismiss ("Motion to Dismiss Order").  <u>See</u> <u>Boniface v. Viliena</u>, 338 F. Supp. 3d 50, 56 (D. Mass. 2018).  Below, the Court summarizes the portions of the Motion to Dismiss Order that are relevant to Defendant's request for reconsideration.

The Motion to Dismiss Order began by addressing Defendant's argument that the Court lacked jurisdiction over Counts I–IV under the ATS because the relevant conduct occurred in Haiti.  <u>Id.</u> at 60.  The ATS states that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  After clarifying that Defendant's argument applied only to Count IV because Counts I–III asserted claims under the TVPA, the Court concluded that it lacked jurisdiction over Count IV under the ATS.  <u>See</u> <u>id.</u> at 60–63.

The Court began its analysis of the ATS claim with <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 569 U.S. 108 (2013), which "addressed the question of whether a claim brought pursuant to the ATS 'may reach conduct occurring in the territory of a foreign sovereign.'"  <u>Boniface</u>, 338 F. Supp. 3d at 60 (quoting <u>Kiobel</u>, 569 U.S. at 115).  In <u>Kiobel</u>, the Supreme Court observed that the "presumption against extraterritorial application"—which is a canon of statutory interpretation that provides that "when a statute gives no clear indication of an extraterritorial application, it has none"—"constrain[s] courts considering causes of action that may be brought

under the ATS." Kiobel, 569 U.S. at 115–16 (internal quotation marks and citations omitted). Applying this construction, the Supreme Court in Kiobel held that the plaintiffs' claims were barred by the ATS because "all of the relevant conduct took place outside the United States." Id. at 124. In so holding, however, the Supreme Court also recognized that claims could be actionable under the ATS so long as they "touch[ed] and concern[ed] the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application." Id. at 124–25.

The Court then turned to Kiobel's progeny to flesh out the boundaries of the "touch and concern" standard while noting that the inquiry is "naturally fact-dependent." Boniface, 338 F. Supp. 3d at 61–62. Next, the Court summarized analogous cases from this district. See id. at 61–62 (first citing Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304 (D. Mass. 2013) and then citing Sexual Minorities Uganda v. Lively, 254 F. Supp. 3d 262 (D. Mass. 2017) ("Lively II"), aff'd in part, appeal dismissed in part, 899 F.3d 24 (1st Cir. 2018)). Finally, the Court examined the Complaint and found that the three major incidents alleged in the Complaint occurred before Defendant fled to the United States and therefore did not "touch and concern" the United States sufficiently to confer jurisdiction under the ATS. Id. at 62. Removing these allegations,

> the only remaining allegations indicating that the claims "touch and concern" the United States are that, after he fled to the United States in 2009, Defendant continued to hold office as the mayor of Les Irois, continued to exercise control over the KOREGA militia, and that from the United States, he coordinated his return to Les Irois and the campaign of persecution against his enemies.

Id. at 63. Analogizing to Lively II, the Court concluded that these facts indicate that Defendant's involvement from the United Stated was "limited" and held that "the Complaint does not demonstrate that the Plaintiffs' ATS claims have a sufficient connection to the United States."

Id.  The Court dismissed Count IV and proceeded to assess whether it had jurisdiction over

Counts I–III under the TVPA.

The Court recognized that "the TVPA creates a cause of action, but unlike the ATS, it

does not provide for federal jurisdiction."  Id. (citing Kadic v. Karadzic, 70 F.3d 232, 246 (2d

Cir. 1995)).  The Court summarized that federal jurisdiction over TVPA claims "is conferred by

both the ATS and general federal question jurisdiction pursuant to 28 U.S.C. § 1331, but many

courts have determined that section 1331 is sufficient in and of itself to establish federal

jurisdiction over TVPA claims."  Id. (first citing Doe v. Drummond Co., 782 F.3d 576, 601 (11th

Cir. 2015), then citing Haim v. Neeman, No. 12-cv-00351, 2012 WL 12905235, at *3 (D.N.J.

Aug. 29, 2012), then citing Doe v. Saravia, 348 F. Supp. 2d 1112, 1118 n.2 (E.D. Cal. 2004), and

then citing Xuncax v. Gramajo, 886 F. Supp. 162, 178 (D. Mass. 1995)).  The Court appended a

footnote to the end of this sentence that read:

> Other courts have suggested that the question of "[w]hether subject matter
> jurisdiction for a claim asserted under the TVPA must be conferred on this Court
> through the [ATS] or can be based solely on 28 U.S.C. § 1331" is a "thorny issue"
> that has not been resolved.  Defendant has not made any argument as to why section
> 1331 is insufficient, however, nor has Defendant cited cases explaining why the
> Court would not have jurisdiction under section 1331.  As subject matter
> jurisdiction is an issue that can be raised at any time . . . Defendant may renew his
> motion for dismissal on this basis with a fully-developed argument if he believes
> that section 1331 is not sufficient to confer jurisdiction over the TVPA claims.

Id. at 63 n.2 (citations omitted).  The Court concluded that it could exercise jurisdiction over the

TVPA claims through section 1331.  Id. at 63–64.

After concluding that it possessed jurisdiction over the TVPA claims, the Court rejected

Defendant's argument that the concerns about extraterritorial jurisdiction expressed by the

Supreme Court in Kiobel "should apply equally to claims brought pursuant to the TVPA."  Id. at

64.  The Court observed that "[o]ther courts have rejected this argument, and Defendant cites no

legal authority that directly supports this proposition." Id. (first citing Drummond, 782 F.3d at 601–02 and then citing Chowdhury v. Worldtel Bangl. Holding, Ltd., 746 F.3d 42, 50–51 (2d Cir. 2014)).

### B. Procedural History

On September 25, 2018, following entry of the Motion to Dismiss Order, Defendant filed a motion for certification of interlocutory appeal. [ECF No. 59]. On September 26, 2018, the Court issued an electronic order advising the parties that it deemed Defendant's filing to be a motion for reconsideration or, in the alternative, a motion for certification of an interlocutory appeal, and permitted Defendant to file a supporting memorandum. [ECF No. 60]. On November 2, 2018, Defendant filed a motion for reconsideration and supporting memorandum. [ECF Nos. 66–67]. On November 21, 2018, Plaintiffs opposed reconsideration and certification of an interlocutory appeal. [ECF No. 70].

## II. MOTION FOR RECONSIDERATION

### A. Legal Standard

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); see Fed. R. Civ. P. 54(b); see Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 ("[A] district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent."); see also Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders . . . remain open to trial court reconsideration . . . ."). The Supreme Court, however, has cautioned that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp.,

486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).  With

these principles in mind, "a court should grant a motion for reconsideration of an interlocutory

order only when the movant demonstrates (1) an intervening change in the law; (2) the discovery

of new evidence not previously available; or (3) a clear error of law in the first order."  Davis, 89

F. Supp. 2d at 147; see Tomon v. Entergy Nuclear Operations, Inc., No. 05-cv-12539-MLW,

2011 WL 3812708, at *1 (D. Mass. Aug. 25, 2011) ("[M]otions for reconsideration are

appropriate only in a limited number of circumstances: if the moving party presents newly

discovered evidence, if there has been an intervening change in the law, or if the movant can

demonstrate that the original decision was based on a manifest error of law or was clearly

unjust.") (citing United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).

**B.      Analysis**

Defendant frames the subject of its motion for reconsideration as follows: "whether the

Court can exercise jurisdiction under the TVPA based solely on federal question jurisdiction, 28

U.S.C. § 1331, in instances where the claims at issue concern only parties who are aliens and do

not touch and concern the territory of the United States."  [ECF No. 67 at 2]; see also [ECF No.

70 at 6–7 (framing issue raised by Defendant's motion as whether Court has jurisdiction over

Plaintiffs' TVPA claims pursuant to 28 U.S.C. § 1331)].  The Court understands the motion to

raise two related issues: first, whether a court may exercise subject matter jurisdiction over

TVPA claims based on 28 U.S.C. § 1331, and second, whether the exercise of jurisdiction over

TVPA claims pursuant to § 1331 is unconstitutional in some circumstances.  To prevail on his

motion for reconsideration, Defendant must demonstrate that the Motion to Dismiss Order

contained a clear error of law or resulted in a manifest injustice as to either of these two issues.[2]

See Fernandez-Vargas, 522 F.3d at 61 n.2; Davis, 89 F. Supp. 2d at 147. Because Defendant is unable to meet this burden, the motion for reconsideration is denied. Although this case presents a legal question that has not been addressed by the First Circuit or the Supreme Court, the lack of controlling authority is not sufficient to warrant the extraordinary remedy of reconsideration where the underlying order is consistent with persuasive authority from other circuits.

1.    Jurisdiction Over TVPA Claims Pursuant to 28 U.S.C. § 1331

Since the TVPA was enacted in 1995, courts have exercised subject matter jurisdiction over TVPA claims based on federal question jurisdiction, 28 U.S.C. § 1331. See, e.g., Warfaa v. Ali, 811 F.3d 653, 657 (4th Cir. 2016) (affirming district court holding that dismissed ATS claims and allowed TVPA claims to proceed and noting that "the TVPA . . . provides a jurisdictional basis separate from the ATS"); Drummond, 782 F.3d at 601 ("Our jurisdiction to consider Plaintiffs' TVPA claims is grounded, instead, in 28 U.S.C. § 1331, the general federal question jurisdiction statute."); Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1269 (11th Cir. 2009) ("The district court determined there was no subject matter jurisdiction for the ATS claims, and because ATS jurisdiction was lacking, . . . concluded the TVPA claims also failed . . . . We conclude the district court erred . . . because jurisdiction over the TVPA claims is conferred by 28 U.S.C. § 1331 in this case." (citations omitted)), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449 (2012); Garcia v. Chapman, 911 F. Supp. 2d 1222, 1239 & n.12 (S.D. Fla. 2012) (allowing ATS claim to proceed and noting that "jurisdiction [over the TVPA claim] is conferred by 28 U.S.C. § 1331," which the defendant conceded at a hearing);

---

[2] Defendant does not argue that there has been an "intervening change in the law" or that he has discovered "new evidence not previously available." See Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000).

Jaramillo v. Naranjo, No. 10-cv-21951, 2012 WL 12915426, at *2–3 (S.D. Fla. June 26, 2012) (allowing TVPA claim to proceed regardless of outcome of ATS claim upon finding that "the weight of authority, specifically within the Eleventh Circuit, support[ed] TVPA jurisdiction under § 1331"); see also Arce v. Garcia, 434 F.3d 1254, 1257 n.8 (11th Cir. 2006) ("The omission of a jurisdictional basis for the first count [alleging a claim under the TVPA] is not fatal, however, for we assume jurisdiction under § 1331 when it appears that a complaint's allegations state a cause of action under federal law."); Hua Chen v. Honghui Shi, No. 09-cv-08920, 2013 WL 3963735, at *7 n.4 (S.D.N.Y. 2013) (dismissing TVPA claim for lack of personal jurisdiction but noting that "[t]he Court might still have subject matter jurisdiction over claims cognizable under the TVPA" in the absence of a viable ATS claim).

As Defendant observes, some courts that have approached the issue of whether section 1331 is sufficient for jurisdiction have adopted the following syllogism: The TVPA is a law of the United States. Section 1331 establishes federal subject matter jurisdiction over the laws of the United States. Therefore, federal courts have subject matter jurisdiction over claims brought under the TVPA. See [ECF No. 67 at 5 (citing Drummond Co., 782 F.3d at 601)]; see also Xuncax v. Gramajo, 886 F. Supp. 162, 177 (D. Mass. 1995) ("[F]ederal statutory law clearly creates the cause of action upon which [plaintiff's] lawsuit is founded. The case thus 'arises under' the laws of the United States for purposes of federal question jurisdiction under 28 U.S.C. § 1331."). Defendant decries the "tautological certainty" of this approach and finds it lacking in legal analysis. [ECF No. 67 at 5].

Defendant's assessment aside, only a minority of courts have rejected the notion that section 1331 alone may confer jurisdiction over TVPA claims. See, e.g., Chen Gang v. Zhao Zhizhen, No. 3:04-cv-01146, 2013 WL 5313411, at *4 (D. Conn. Sept. 20, 2013) ("Without

subject matter jurisdiction under the ATS, the Court also lacks jurisdiction over plaintiffs' TVPA claim.").  A few other courts have declined to express a view on the issue where doing so is unnecessary to the adjudication of the case.  See Singh v. G.K., No. 1:15-cv-05372, 2016 WL 3181149, at *6 (S.D.N.Y. June 2, 2016) (stating that after the Second Circuit "noted without resolving a split of authority on the issue of whether a claim under the TVPA could be brought solely under the jurisdiction conferred by § 1331," "district courts have generally attempted to avoid this 'thorny issue'" (citing Arndt v. UBS AG, 342 F. Supp. 2d 132, 141 (E.D.N.Y. 2004)).

Accordingly, secure in its assessment that it was not a clear error of law to adopt the majority approach and to exercise jurisdiction over the TVPA claims through § 1331, the Court proceeds to consider the second, related issue of whether the Constitution limits the exercise of such jurisdiction in situations where the TVPA claims "concern only parties who are aliens and do not touch and concern the territory of the United States."[3]  See [ECF No. 67 at 2].

        2.     Statutory and Constitutional Limits of the Extraterritorial Application of the TVPA

Defendant presents two arguments in support of its position that "the exercise of jurisdiction over domestic crimes within another country between persons who are not United States citizens falls outside the limits of the authority vested in Congress by the Constitution:" first, that the exercise of jurisdiction in these situations falls outside the scope of the statutory language of the TVPA, and second, that the exercise of jurisdiction in these situations is unconstitutional as violative of the law of nations.  See [ECF No. 67 at 2, 9].  The Court rejects Defendant's statutory construction argument, as it did in the Motion to Dismiss Order, and

---

[3] The Court observes that subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not limitless because the scope of claims a court may adjudicate is constrained by the court's ability to exercise personal jurisdiction over a defendant.

declines to reconsider its exercise of jurisdiction over Plaintiffs' TVPA claims based on Defendant's reasoned, but unsupported, constitutional law argument.

i.      Statutory Construction

Defendant asserted in his original motion that "the jurisdictional limits of the ATS remain, as well, the appropriate limit of jurisdiction under the TVPA," which the Court understands as arguing for an extension of the Kiobel holding to the TVPA. See [ECF No. 59 ¶ 5]. In his supplemental memorandum, however, Defendant concedes that the TVPA's legislative history indicates an intention to provide a remedy for torture committed abroad, and he notes that several courts, including this Court, have identified "[the TVPA's] intent to extend beyond the territory of the United States." See [ECF No. 67 at 8 (first citing Chowdhury v. Worldtel Bangladesh Holding, Ltd., 746 F.3d 42, 51 (2d Cir. 2014) and then citing Boniface, 338 F. Supp. 3d at 64 (rejecting argument that "the Supreme Court's concerns about extraterritorial jurisdiction as expressed in Kiobel should apply equally to claims brought pursuant to the TVPA"))]; see also [ECF No. 70 at 11–12 (stating that the TVPA's legislative history supports its extraterritorial application)]. Accordingly, the Court affirms its conclusion that Congress intended the TVPA to have an extraterritorial application, see Boniface, 338 F. Supp. 3d at 64, and proceeds to consider whether its exercise of jurisdiction over the TVPA claims in this case was unconstitutional and merits reconsideration.

ii.      Constitutional Analysis

Defendant presents two arguments in support of his position that application of the TVPA to situations where a non-U.S. citizen was tortured by a non-U.S. citizen outside the United States is unconstitutional. First, Defendant argues that the Law of Nations clause in the Constitution, which authorizes Congress to "define and punish . . . offenses against the law of nations," cannot be relied on as a source of Congress' power to extend the TVPA in this fashion.

[ECF No. 67 at 6 ("There is nothing within the clause or its historical antecedents to suggest that it was meant to permit Congress to create forums for the exercise of civil jurisdiction governing events unrelated to the United States.")]; see U.S. Const., art. 1, § 8. Plaintiffs argue that the Law of Nations clause permits Congress "to prescribe punishments for conduct that the United States has an international obligation to prevent," such as torture and extrajudicial killings, and directs the Court to the TVPA Senate Report, the Motion to Dismiss Order, and case law. See [ECF No. 70 at 12–13 (quoting U.S. Const., art. I, § 8)]; see also S. Rep. No. 102-249 (1991), 1991 WL 258662 (adding that, in addition to the Offenses Clause, the "arising under" clause of Article III also "allows Congress to confer jurisdiction on U.S. Courts to recognize claims brought by a foreign plaintiff against a foreign defendant"). The Court understands Defendant's argument on this point to be another attempt at arguing for an extension of Kiobel's holding to the TVPA, which the Court has already rejected. See supra Section II.B.2.i; see also Boniface, 338 F. Supp. 3d at 64 (summarizing Defendant's argument that "the law of nations does not permit one sovereign to exercise territorial jurisdiction over the affairs of another sovereign" and concluding that "[o]ther courts have rejected this argument, and Defendant cites no legal authority that directly supports his proposition").

Second, Defendant contends that comity between nations, or "the respect sovereign nations afford each other by limiting the reach of their laws," makes application of the TVPA to this case unconstitutional. [ECF No. 67 at 8 (quoting Hartford Fire Ins. Co., 509 U.S. at 817), 10]. Defendant relies on Justice Scalia's dissent in Hartford Fire Insurance Co. v. California, 509 U.S. 764 (1993), which interpreted the scope of the Sherman Act and addressed the constitutionality of its extraterritorial application. See [ECF No. 67 at 6–7]. In Hartford Fire, Justice Scalia accepted the presumption that federal question jurisdiction applied to a case

brought under the Sherman Act and observed that doing so "changes the problem set from one about jurisdiction . . . to one about the substantive scope of the legislation." [Id. at 7]. This shift led Justice Scalia to two questions: does the statute have extraterritorial reach and "if . . . the presumption against the extraterritorial scope of the statute is overcome, is the statute being construed to violate the law of nations . . . ." [Id. (quoting Hartford Fire Ins. Co., 509 U.S. at 814–15)].

The former question concerning extraterritorial reach has been resolved, see supra Section II.B.2.i, which leaves the question of whether the TVPA is being construed to violate the law of nations. On this point, Justice Scalia noted that "even where the presumption against extraterritoriality does not apply, statutes should not be interpreted to regulate foreign persons or conduct if that regulation would conflict with principles of international law." [ECF No. 67 at 7 (quoting Hartford Fire Ins. Co., 509 U.S. at 815)]. Justice Scalia also utilizes the Restatement (Third) of Foreign Relations Law, which instructs that even if a nation may have some "basis" for jurisdiction to prescribe law, it should refrain from exercising that jurisdiction with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable." Restatement (Third) of Foreign Relations Law, § 403(1) (Am. Law Inst. 1987). The Restatement suggests a series of factors to consider when determining whether the exercise of jurisdiction is reasonable.[4] [ECF No. 67 at 9 (quoting Hartford, 509 U.S. at 818–

---

[4] These factors include

> "the extent to which the activity takes place within the territory [of the regulating state]," id., § 403(2)(a); "the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the . . . activity to be regulated," id., § 403(2)(b); "the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted," id., § 403(2)(c); "the extent to which another state may have an interest in regulating the activity," id.,

19)].  Here, Defendant argues that the exercise of jurisdiction would be unreasonable, based on

reference to these factors, and "would be inconsistent with the traditional notions of comity

between nations."  [Id. at 9–10].

Defendant does not cite to any case in which a court has accepted this argument or

dismissed a TVPA claim on comity grounds.[5]  See [ECF No. 70 at 16].  In fact, courts have

permitted TVPA claims to proceed in cases where neither the defendant nor victim was a U.S.

citizen at the time of the alleged torture and in which the torture took place outside of the United

States.  See, e.g., Jara v. Nunez, No. 6:13-cv-01426, 2015 WL 12852354, at *4–6 (M.D. Fla.

Apr. 14, 2015); Warfaa, 33 F. Supp. 3d at 656–57, 659, 666; Jaramillo, 2012 WL 12915246, at

*3–4.  For example, in Warfaa v. Ali, 33 F. Supp. 3d 653 (E.D. Va. July 9, 2014), a Somalian

native and citizen who had been tortured in Somalia and left for dead brought claims under the

ATS and TVPA.  33 F. Supp. 3d at 656–57.  The defendant was also a Somalian native and

citizen, but was residing in the United States at the time of the case.  Id. at 656.  The Court

dismissed the victim's ATS claim because the conduct occurred in Somalia but allowed the

TVPA claims to proceed pursuant to federal question jurisdiction as they "are not subject to the

same analysis."[6]  Id. at 659, 666.  Similarly, in Jaramillo v. Naranjo, No. 10-cv-21951 (S.D. Fla.

_____

§ 403(2)(g); and "the likelihood of conflict with regulation by another state," id.,
§ 403(2)(h).

[ECF No. 67 at 9].

[5] Apart from the Motion to Dismiss Order, Defendant cites to one TVPA case throughout its
constitutionality argument.  See [ECF No. 67 at 6–10].  That case is Chowdhhury v. Worrldtel
Bangladesh Holding, Ltd., 746 F.3d 42 (2d Cir. 2014), which held that "unlike the ATS, [the
TVPA] has extraterritorial application."  746 F.3d at 51.

[6] The court in Warfaa v. Ali, 33 F. Supp. 3d 653 (E.D. Va. July 9, 2014), does not expressly
assert jurisdiction pursuant to 28 U.S.C. § 1331, but it is implied based on its analysis of other
jurisdictional issues such as the application of the political question doctrine, act of state
doctrine, and official acts immunity. See 33 F. Supp. 3d at 659–63.

June 26, 2012), beneficiaries of the estates of Columbian citizens who had been killed by

paramilitary forces in Columbia brought claims under the ATS and TVPA. See Compl. ¶¶ 1–2,

9–16, 51–100, Jaramillo v. Naranjo, No. 10-cv-21951 (S.D. Fla. June 14, 2010), ECF No. 1. The

court stayed the action pending the Supreme Court's ruling in Kiobel. Jaramillo, 2012 WL

12915246, at *1. On a motion for reconsideration, the court vacated the stay as to the TVPA

claims and explained that "as the Court now understands it, the Torture Victim Protection Act

presents a separate claim and a separate basis for subject matter jurisdiction." Id. at *2.[7] Finally,

in Jara v. Nunez, No. 6:13-cv-01426, 2015 WL 12852354 (M.D. Fla. Apr. 14, 2015), the court

dismissed ATS claims but allowed TVPA claims brought by surviving family members against a

former member of the Chilean military for extrajudicial killing and torture that occurred in Chile.

See 2015 WL 12852354, at *4–6; Am. Compl. ¶¶ 1, 11, 13–16, No. 6:13-cv-01426 (M.D. Fla.

Feb. 19, 2014) (describing torture and killing in Chile, alleging that defendant moved

permanently to the United States after the killing, and alleging that plaintiffs and surviving

family members of the deceased were all not U.S. citizens). In the absence of case law

supporting Defendant's position, the Court is not persuaded that its exercise of jurisdiction in this

matter was unconstitutional or a clear error of law that should be reconsidered.

III.     **MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

   A.     **Legal Standard**

   In the alternative to reconsideration, Defendant asks the Court to certify an interlocutory

appeal of the Motion to Dismiss Order to allow the First Circuit to weigh in on the question of

the limits of jurisdiction under the TVPA. See [ECF Nos. 59, 66]. A district judge may certify

---

[7] The ATS claims were later dismissed for lack of jurisdiction because all of the events alleged
occurred in Columbia. See Order at 16–17, 30, Jaramillo v. Naranjo, No. 10-cv-21951 (S.D. Fla.
Sept. 30, 2014), ECF No. 101. The court also dismissed some of the TVPA claims pursuant to
Federal Rule of Civil Procedure 12(b)(6). See id. at 17–30.

an interlocutory appeal in a written order when issuing an otherwise not-appealable civil order if she is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The First Circuit has "repeatedly emphasized that 'interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'"  Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) (quoting Palandjian v. Pahlavi, 782 F.2d 313, 314 (1st Cir. 1986)).

"As a general rule, [the First Circuit does] not grant interlocutory appeals from a denial of a motion to dismiss."  Id. (citing McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).  "This reflects [the First Circuit's] policy preference against piecemeal litigation as well as prudential concerns about mootness, ripeness, and lengthy appellate proceedings."  Id. (citation omitted).  In addition, the First Circuit has recognized that "the 'fact that appreciable trial time may be saved is not determinative,' and neither is the fact that the case has 'tremendous implications' . . . ."  Id. (citations omitted) (first quoting Palandjian, 782 F.2d at 314 and then quoting Slade v. Shearson, Hammill & Co., 517 F.2d 398, 400 (2d Cir. 1974)).

### B.   Analysis

Defendant argues that certification of an interlocutory appeal is merited here because the question of the limits of jurisdiction under the TVPA is a controlling question of law, there are "ample grounds" for Defendant's position that jurisdiction is lacking, and allowing the appeal "may materially advance the ultimate termination of the litigation."  See [ECF No. 59 ¶¶ 9–12; ECF No. 67 at 10–11].  Plaintiffs respond that certification of an interlocutory appeal is

inappropriate because Defendant has not established a controlling question of law, which "typically involves a question of statutory or regulatory interpretation," and has not demonstrated a substantial difference of opinion "because every court that has addressed this issue has ruled in favor of jurisdiction," [ECF No. 70 at 17–19].  Plaintiffs also assert that this case does not present exceptional circumstances that would justify an interlocutory appeal.  [Id. at 19–20].

The proposed interlocutory appeal of the Motion to Dismiss Order clearly concerns a controlling question of law: whether "the Court may exercise jurisdiction over Plaintiffs' TVPA claims through section 1331."  See Boniface, 338 F. Supp. 3d at 63–64.  "[A] question of law is controlling if reversal of the district court's order would terminate the action."  Johansen v. Liberty Mut. Grp., Inc., No. 15-cv-12920-ADB, 2017 WL 937712, at *1 (D. Mass. Mar. 9, 2017) (quoting Philip Morris Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997)).  "A controlling question of law usually involves a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than an application of law to the facts."  Id. (quoting S. Orange Chiropractic Ctr., LLC v. Cayan LLC, No. 15-cv-13069-PBS, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016)).  Here, the issue of the scope of permissible jurisdiction under the TVPA is a question of law that controls the case because, as Defendant asserts, "[i]f there is no jurisdiction under the TVPA, there is no jurisdiction."  [ECF No. 67 at 10].  For the same reason, the Court concludes that an interlocutory appeal may materially advance the litigation.  See [ECF No. 59 ¶ 12].

There is also substantial ground for difference of opinion on the issue.  Although "many courts have determined that section 1331 is sufficient in and of itself to establish federal jurisdiction over TVPA claims," Boniface, 338 F. Supp. 3d at 63, other courts have resisted adopting this position, see Singh v. G.K., 2016 WL 3181149, at *6; Chen Gang, 2013 WL

5313411, at \*4, and the First Circuit has not provided guidance to district courts on this issue. As noted in the Motion to Dismiss Order, this Court considered the issue unsettled enough to invite Defendant to re-present argument on the issue in response to the Order.  See Boniface, 338 F. Supp. 3d at 63 n.2.  Although the Court does not ultimately find that its Motion to Dismiss Order merits reconsideration, it nonetheless concludes that there is disagreement within the judiciary concerning how to approach personal jurisdiction under the TVPA.

Finally, the Court believes that this case presents an exceptional circumstance justifying a break from the First Circuit's general practice of disfavoring interlocutory appeals from a denial of a motion to dismiss.  See Caraballo-Seda, 395 F.3d at 9 (citing McGillicuddy, 746 F.2d at 76 n.1).  The Court recognizes that the controlling legal question in this case is a jurisdictional matter that could be addressed in the normal course on a post-judgment appeal.  Cf. U.S. v. Sorren, 605 F.2d 1211, 1213–14 (1st Cir. 1979) ("[D]ecisions denying appeals from other jurisdictional challenges suggest that the individual litigant's interest in the limitations on the courts' jurisdiction is adequately served by postjudgment appeal.").  Defendant's circumstances, however, suggest that he will be unable to proceed in this normal course or seek relief through a post-judgment appeal.

As the Court understands the situation, this interlocutory appeal may be Defendant's final opportunity to challenge the claims against him with legal representation.  Defendant's counsel confirms in their motion papers, "absent an interlocutory appeal, the Defendant will most likely return to his pro se status and this issue, and its potential chance for appellate review, stand a good chance of being lost."  [ECF No. 59 ¶ 12].  Indeed, if an interlocutory appeal is denied, the Court is not optimistic that additional pro bono counsel could be retained given the tremendous difficulty the Court faced in identifying pro bono counsel at the outset of this litigation due to the

nature of the claims asserted and the anticipated cost of conducting discovery in Haiti. Should

Defendant return to *pro se* status following the denial of an interlocutory appeal, the Court does

not have confidence that he would be able to represent himself effectively through the appellate

process. Because there may not be another opportunity for Defendant to argue on appeal the

merits of his legal arguments favoring dismissal of the claims against him, which contain serious

allegations of extrajudicial killing and torture, the Court believes that this case presents an

exceptional scenario appropriate for interlocutory review. Accordingly, Defendant's motion for

the alternative relief of certification of an interlocutory appeal is granted.

## IV.     CONCLUSION

Accordingly, Defendant's motion for reconsideration [ECF No. 66] is <u>DENIED</u>, and

Defendant's motion for the alternative relief of certification of an interlocutory appeal [ECF No.

59] is <u>GRANTED</u>.

**SO ORDERED.**

September 30, 2019                                      /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE