UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| DAVID BONIFACE,<br>NISSANDÈRE MARTYR, and<br>JUDERS YSEME,<br><br>        Plaintiffs,<br><br>    v.<br><br>JEAN MOROSE VILIENA<br>(a.k.a. JEAN MOROSE VILLIENA),<br><br>        Defendant. | Case No. 1:17-cv-10477-ADB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
RESPONSIVE ANSWERS FROM DEFENDANT TO PLAINTIFFS'
INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 37(3)(b), Fed. R. Civ. P. 33 and this Court's inherent powers, plaintiffs David Boniface ("David"), Nissandère Martyr ("Nissandère"), and Juders Ysemé ("Juders") (collectively "Plaintiffs") hereby submit this memorandum in support of their motion to compel defendant, Jean Morose Viliena ("Defendant") to provide substantive responses to Plaintiffs' Interrogatories Nos. 12 and 14.  Plaintiffs seek discoverable information regarding Defendant's communications and assets that is relevant to their claims.

**RELEVANT FACTUAL BACKGROUND**

This case arises from the brutal torture, killing, and persecution of media activists and human rights advocates in the Haitian town of Les Irois between 2007 and 2009.  As the former mayor of Les Irois, Defendant personally led an armed group aligned with his political party in a series of attacks on his critics and perceived political opponents in Les Irois.  (Dkt. 1, ¶ 1).  As alleged in the Complaint, Defendant and his associates killed David's younger brother, Eclesiaste Boniface (Dkt. 1, ¶¶ 29-39), tortured and attempted to extrajudicially kill Juders and Nissage

Martyr (Dkt. 1, ¶¶ 40-51), and led a campaign of mass arson that burnt down the homes of 36 perceived political opponents in Les Irois, including those of Plaintiffs (Dkt. 1, ¶¶ 52-58).

At all relevant times, Defendant moved freely between Haiti and the United States and was in communication with his associates in Les Irois to coordinate the campaign of persecution against Plaintiffs (Dkt. 1, ¶¶ 59-64), which continues to this day. On March 24, 2017, one day after Defendant was served with the Summons and Complaint in this matter, Nissage Martyr died suddenly under unusual circumstances.[1] Defendant has continued to travel to Haiti and work in concert with his associates to target Plaintiffs for retaliation, prompting Plaintiffs to seek and this Court to grant an emergency Protective Order on August 8, 2019. (Dkt. 80).

## RELEVANT DISCOVERY BACKGROUND

Plaintiffs served their first set of Interrogatories on March 15, 2019. Defendant responded on May 1, 2019. On July 17, 2019, counsel for Plaintiffs sent a meet and confer letter identifying Defendant's deficient responses and explaining why they were incomplete, evasive, non-responsive, and/or non-compliant with the Federal Rules of Civil Procedure. Counsel for Defendant responded by letter on July 30, 2019, and the parties telephonically met and conferred further on August 13, 2019 and September 13, 2019. (Lau Decl. at ¶¶ 5-6.) Defendant subsequently served first amended responses on October 4, 2019. Defendant's first amended responses were equally deficient, particularly with respect to Interrogatories 12 and 14, which Plaintiffs' counsel detailed in an additional meet and confer letter dated October 21, 2019. On December 10, 2019, Defendant served his second amended responses without addressing those documented deficiencies. (Lau Decl., Ex. 1 [Defendant's Second Amended Answers to

---

[1] The Court granted Plaintiffs' motion to substitute Nissandère Martyr, Nissage's son, as plaintiff in place of Nissage Martyr on August 31, 2018. *See* Dkt 29, 30, 40, 43 and 56.

- 2 -

Interrogatories].) In light of Defendant's continued refusal to provide substantive responses to Plaintiffs' Interrogatories Nos. 12 and 14, Plaintiffs are forced to seek relief from the Court.

## I. PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT

Pursuant to Local Rule 37.1(b)(4-5), below is the text of Plaintiffs' Interrogatory Nos. 12 and 14 and Defendant's Second Amended Responses:

### PLAINTIFFS' INTERROGATORY NO. 12

Identify all the means of Communications You have used with Persons located in the United States or Haiti from January 1, 2006 to the present, including but not limited to the user and account information for Your telephone numbers, wireless carrier accounts, electronic mail (e-mail) accounts, text messages, instant messaging accounts (such as WhatsApp, Telegram or Signal), video chat service accounts (such as Skype), and social media accounts (such as Facebook).

### DEFENDANT'S SECOND AMENDED RESPONSE TO PLAINTIFFS' INTERROGATORY NO. 12

The Defendant objects to this Interrogatory because it is overbroad in time and scope. The defendant has no documents evidencing any such communications. The Defendant's wireless communication provider is Sprint.

### PLAINTIFFS' INTERROGATORY NO. 14

Identify any and all real property, bank account(s), trust(s), or other asset(s), investment(s), stock(s) or bond(s), corporation(s), partnership(s) or other business venture(s), in or over which You have or have had a legal or beneficial interest, or over which You have created or transferred (by sale, gift, or otherwise) a legal or beneficial interest to or from any other Person, at any time since January 1, 2006, including but not limited to any assets in Haiti and the United States, including any aforementioned asset that was transferred to another party or entity.

**DEFENDANT'S SECOND AMENDED RESPONSE TO PLAINTIFFS' INTERROGATORY NO. 14**

The Defendant objects to this Interrogatory because it seeks information that is not relevant to the facts at issue in this action, that is an unreasonable invasion of his privacy, and that it is interposed for purposes of harassment.

## LEGAL STANDARD

Under Fed. R. Civ. P. 37(3)(B)(iii), this Court has the authority to compel Defendant to answer Plaintiffs' Interrogatories Nos. 12 and 14, which were properly submitted pursuant to Fed.R.Civ.P. 33.  Plaintiffs are entitled to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P.  26(b)(1).  Parties have a duty to respond to discovery demands fully and completely.  Fed. R. Civ. P. 37(a)(4); *see also Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2009) ("A party to whom an interrogatory is propounded must provide true, explicit, responsive, complete, and candid answers.").  There is no privilege that protects Defendant's means of communications or financial information from discovery, nor has Defendant asserted any such privilege in his responses to Plaintiffs' Interrogatories.  Discovery into electronic communications and a party's personal finances is routinely allowed when relevant—"'personal intrusion'" is not "'so great that it outweighs [a party's] right to pursue relevant material'" and "whatever privacy interests [defendant has] in the material sought do not outweigh the plaintiff's right to pursue relevant material."'  *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 377 (W.D.N.Y. 2006), *citing Sierra Rutile Ltd. v. Katz,* 1994 WL 185751, *4 (S.D.N.Y. 1994), and *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (allowing discovery into personal financial information).

## ARGUMENT

### I.   INTERROGATORY NO. 12 SEEKS INFORMATION RELEVANT AND LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

Plaintiffs' Interrogatory No. 12 requests that Defendant identify the means by which he has communicated with persons located in the US or Haiti from January 1, 2006 to the present, including his telephone numbers, wireless carrier account, electronic mail accounts, messaging accounts such as WhatsApp, and social media accounts. (*See* Lau Decl., **Ex. 1** at p. 6-7.)

There is no privilege protecting the *means* of Defendant's communications, nor does Defendant have any privacy interest in this information. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (Even attorney-client "privilege extends only to communications and not to facts"); *see also Smith v. Maryland*, 442 U.S. 735, 735 (1979) (holding that there is "no actual expectation of privacy in the phone numbers he dialed" under the Fourth Amendment). Such information is routinely discoverable. *Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144, 145-46 (D. Mass. 2005) ("As the parties are no doubt aware, e-mail messages and other electronically stored information are generally subject to document disclosure requirements under the Federal Rules of Civil Procedure."); *see also Mercado Cordova v. Walmart Puerto Rico, Inc.*, No. CV 16-2195 (ADC), 2019 WL 3226893, at *4 (D.P.R. July 16, 2019) (Plaintiff's Facebook account information was discoverable and Plaintiff's deletion of her Facebook account following discovery requests was spoliation.).

While Defendant contends in his second amended response that he has no *documents* regarding the requested communications, this is nonresponsive to the interrogatory as posed, which requests the identification of his *means* of communication and account information for each method of communication. Despite Plaintiffs' repeated meet and confer efforts on the issue, Defendant refuses provide the requested information.

The information sought by Interrogatory No. 12 is vitally relevant to Plaintiffs' claims. Plaintiffs have alleged that Defendant communicated with his associates to coordinate the campaign of persecution against them, including while he was based in the United States. Further, Plaintiffs have submitted sworn declarations documenting Defendant's continued coordination with his associates in Haiti to threaten and intimidate Plaintiffs for their involvement in the present suit. (Dkt. 79). On information and belief, social media accounts, WhatsApp and Facebook Messenger in particular, are widely used as means of communication by Haitians both in Haiti and in the United States. Defendant should confirm whether he uses either of these platforms, along with any other means of communication, and, if so, provide his user and account information.

The information regarding Defendant's means of communications also bears on Defendant's repeated denials that he has been in communication with others regarding any of the Plaintiffs or any of the facts alleged in the Complaint. (*See e.g.,* Lau Decl., **Ex. 1** at p. 6 [Answer to Interrogatory 11].) Plaintiffs have detailed Defendant's ongoing contacts with others concerning them, of which they are aware. (Dkt. 79). Indeed, in granting Plaintiffs' motion for a Protective Order, the Court found:

> Defendant Jean Morose Viliena ("Defendant") was present in Haiti on or around August 4, 2019 and had contact with former associates during which he discussed harming Plaintiffs. Plaintiffs Boniface and Yseme reasonably fear for their safety and are concerned about retaliation by Defendant. Their fears are based on past dealings with Defendant as well as a recent interaction with men they believe to be Defendant's associates. In light of the foregoing, the Court concludes that Plaintiffs have demonstrated good cause for a protective order. (Dkt. 80)

Plaintiffs respectfully request that the Court reject Defendant's blanket refusal to identify his means of communication and compel him to provide an answer to Interrogatory No. 12.

**I.     INTERROGATORY NO. 14 SEEKS INFORMATION RELEVANT TO PLAINTIFFS' CLAIMS AND CLAIM FOR PUNITIVE DAMAGES, AS WELL AS DEFENDANT'S CLAIMED INDIGENT STATUS AND CANDOR TO THE COURT.**

Plaintiffs' Interrogatory 14 requests that Defendant identify any and all real property, bank accounts, trusts, or other assets over which he has a legal or beneficial interest, or over which he has created or transferred a legal or beneficial interest to or from any other person, including assets in the United States and Haiti.  (*See* Lau Decl., **Ex. 1** at p. 7-8.)  In Defendant's Second Amended Response, despite Plaintiffs' meet and confer efforts, Defendant continues to object to this interrogatory on the grounds of relevance, harassment, and privacy.  However, to assert a proper objection to an interrogatory, "one must do more than simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad.'"  *Essex Ins. Co. v. Interstate Fire & Safety Equip. Co./Interstate Fire & Safety Cleaning Co.*, 263 F.R.D. 72, 73 (D. Conn. 2009).  Defendant's objections amount to a bare refusal to provide the requested information, without providing any case law or claim of privilege that would protect the requested information from discovery.

Plaintiffs are entitled to discovery of Defendant's financial information because it is directly relevant to Plaintiffs' claim for punitive damages under the Torture Victim Protection Act, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C.§ 1350, note).  *See* Dkt. 1 at 26.  "When a punitive damages claim has been asserted by the plaintiff, ***a majority of federal courts permit pretrial discovery*** of financial information about the defendant ***without requiring plaintiff to establish a prima facie case*** on the issue of punitive damages."  *CEH, Inc. v. FV Seafarer*, 153 F.R.D. 491, 497-498 (D.R.I. 1994) (emphasis added); *Christy v. Ashkin*, 972 F. Supp. 253, 253 (D.Vt. 1997); *Morissette v. Cote Corp.*, No. 2:14-CV-00452-JDL, 2016 WL 6902116, at *2 (D.Me. Nov. 22, 2016); *Turner v. Vermont Ctr. for the Deaf & Hard of Hearing, Inc.*, No. 2:02-CV-251, 2003 WL 27380992, at *4 (D.Vt. Oct. 1, 2003); *Patient A v. Vermont Agency of Human Servs.*, No. 5:14-CV-000206, 2016 WL 880036, at *2 (D.Vt. Mar. 1, 2016).

Where "Plaintiffs have alleged facts sufficient to make a claim for punitive damages, and sufficient to show that their claim for punitive damages is not spurious," then Plaintiffs are "entitled to discovery of defendants' financial information." *CEH, Inc.*, 153 F.R.D. at 497-498. Here, Plaintiffs are pursuing a claim under the Torture Victim Protection Act, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C.§ 1350, note), for the brutal torture, killing, and persecution of media activists and human rights advocates. Punitive damages are available under this statute for such abuses. *Xuncax v. Gramajo*, 886 F. Supp. 162, 198 (D. Mass. 1995) ("[T]he developing body of federal common law precedent . . . has allowed both compensatory and punitive damages for such harms.").

Further, Interrogatory No. 14 seeks information relevant to the Complaint's allegations, and is well within the personal knowledge of the Defendant. The potential transfer of Defendant's assets to other individuals would go to demonstrating Defendant's control of and coordination with individuals in his mayoral staff and/or in the KOREGA militia, whom Plaintiffs allege Defendant conspired with to carry out the violence targeting them.

Additionally, Defendant's financial condition is made relevant by his claimed indigence. According to the posted rules of the District of Massachusetts, Defendant was required to provide the Court with his "financial status" in order to obtain pro bono counsel. *See* http://www.mad.uscourts.gov/general/prose-litigants.htm#ProSe. On September 7, 2017, Defendant made an oral motion for the appointment of Pro Bono counsel before this Court. In that motion, Defendant told the Court "I have no money" and that he "could not even pay for the probable expenses" incurred in defending this matter. (Lau Decl., **Ex. 2** [Transcript of Status Conference of September 7, 2017, at 4:22, 5:20-21].) Discovery into Defendant's financial assets is relevant to determine the veracity of these statements made in open court, in order to "shed further light on the truthfulness of [Defendant's] *in forma pauperis* application." *Chriswell v. Big Score Entm't, LLC*, No. 11 C 00861, 2013 WL 315743, at *3 (N.D. Ill. Jan. 28,

2013) (allowing discovery into party's finances where party filed *in forma pauperis* application but had sold over 1.7 million copies of her record); *Redd v. New York State Div. of Parole*, 923 F.Supp.2d 393, 410 (E.D.N.Y. 2013) (Cross examination into Plaintiff's finances made relevant where Plaintiff claimed to make only $39,000.00 per year on *in forma pauperis* application, but "her actual income . . . [was] approximately $68,000" and inquiry into these matters "would be highly probative of her character for truthfulness."). Plaintiffs' Interrogatory No. 14 seeks information that is relevant to Plaintiffs' claim for punitive damages, central to the allegations in the Complaint, and pertains to Defendant's representations regarding his financial condition to this Court, which is not subject to any claim of privilege.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order compelling Defendant to provide complete and substantive responses to Interrogatories Nos. 12 and 14.

Dated:  February 27, 2020

Respectfully submitted,

DAVID BONIFACE, NISSANDERE MARTYR, AND JUDERS YSEME

By their attorneys,

*/s/ Bonnie Lau*
CENTER FOR JUSTICE & ACCOUNTABILITY
Daniel McLaughlin (pro hac vice)
dmclaughlin@cja.org
Carmen K. Cheung (pro hac vice)
ccheung@cja.org
Elzbieta T. Matthews (pro hac vice)
ematthews@cja.org
One Hallidie Plaza, Suite 406
San Francisco, CA 94102
(415) 544-0444 (telephone)

MORRISON & FOERSTER LLP
Bonnie Lau (pro hac vice)
blau@mofo.com
425 Market Street
San Francisco, California 94105
(415) 268-6511 (telephone)

DENTONS US LLP
Philip A. O'Connell, Jr. (BBO# 649343)
philip.oconnelljr@dentons.com
Tony K. Lu (BBO# 678791)
tony.lu@dentons.com
One Beacon Street, Suite 25300
Boston, Massachusetts 02108
(617) 235-6802 (telephone)

## CERTIFICATE OF SERVICE

I certify that on February 27, 2020, I caused to be filed electronically a true copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will notify the parties of record via electronic notification.

    *Ermelita P. Gonzalez*