UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

DAVID BONIFACE, NISSAGE MARTYR )
and JUDERS YSEMÉ )
                                                                         )
            Plaintiffs,                                              )
                                                                         )            Civil Action
v.                                                                      )            No. 17-10477-ADB
                                                                         )
JEAN MOROSE VILIENA                             )
                                                                         )
            Defendant.                                              )
_____)

DEFENDANT JEAN MOROSE VILIENA'S  MEMORANDUM OF LAW
IN SUPPORT OF MOTION  FOR SUMMARY JUDGMENT
AND, IN THE ALTERNATIVE,  TO SEVER CLAIMS

The Defendant Jean Morose Viliena ("Defendant") submits this memorandum of law in

support of the Motion of Defendant Jean Morse Viliena for Summary Judgment and to Sever

Claims.

Introduction

This is an action by three Haitian citizens against a defendant Haitian citizen to recover

civil damages for torts allegedly committed in Haiti in the period 2007-2010.  The Plaintiffs have

been awarded damages against third parties for the losses alleged in the Complaint in civil court

in Haiti.  They bring this action seeking "justice" against the Defendant, who was found not

responsible by a Haitian court, and to increase the amount of the award by the Haitian courts.

The Complaint seeks to recover on five (5) separate counts. Counts I, II and III asserts causes of

action under the Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73

(1992) (codified at 28 U.S.C. § 1350, note). Count IV asserts a cause of action under the Alien

Tort Statute, 28 U.S.C. § 1350 ("ATS"). Count V asserts a claim for arson under Haitian law.

On August 31, 2018, the Court issued its <u>Memorandum and Order on Motion to Dismiss and Motion to Substitute Party</u> [Docket No. 56] (the "Order") dismissing Count IV alleging a cause of action under the ATS on the grounds that the Complaint failed to allege with sufficient particularity that the claims touch and concern the territory of the United States, the standard articulated in <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 569 U.S. 108 (2013).  There is no jurisdiction for the claims asserted in this matter under the ATS.

The Defendant brings this motion for summary judgment and, in the alternative, to sever claims based on: 1)  the absence of any genuine dispute as to material facts with respect to Count V, seeking to recover for arson; 2) the doctrine of adjudicatory comity; and 3) the absence of subject matter jurisdiction.  Alternatively, absent the count for arson, the remaining claims in this action relate to two distinct acts; the death of David Boniface's brother, Eclesiaste, and the alleged shooting of Juders Yseme and Nissage Martyr.  David Boniface's claims should be severed from those of the other Plaintiffs to avoid unfair prejudice to the Defendant.

II.  <u>Procedural Background</u>

The Complaint in this matter was filed on March 22, 2017. [Docket No. 1] After appointment of counsel, the Defendant filed a Motion to Dismiss. [Docket No. 46] The Court issued its Order on the Motion to Dismiss on August 31, 2018. [Docket No. 56] dismissing Count IV of the Complaint under the Alien Tort Statute, for failure of the Complaint to sufficiently allege that the facts of the matter touched or concerned the United States, and allowing the substitution of Nissandre Martyr as plaintiff for the deceased Nissage Martyr. The Court subsequently denied the Defendant's motion for reconsideration of  its decision allowing the counts under the TVPA to proceed and otherwise certified those issues to the First Circuit for

interlocutory appeal pursuant to 28 USC § 1292(b). [Docket No. 84].  By Order dated February

19, 2020, the Court of Appeals denied the petition for interlocutory appeal. [Case No. 19-8027]

## III. Facts

The Plaintiffs and the Defendants are each residents of Haiti and the acts that are the

subject of the Complaint all took place in Haiti. [Defendant's Statement of Undisputed Material

Facts (hereinafter "Stmt."), ¶ 1.]   The Defendant was not present in Les Irois, Haiti on October

29, 2009 and took no action to commit arson or to encourage or support others in doing so.

[Stmt. ¶ 2].  Following the events set forth in the Complaint  the rights of the Plaintiffs to pursue

a civil remedy in Haiti were recognized by the Haitian courts. [Stmt. ¶ 3].

The rights of the Plaintiffs to file a civil complaint against Defendant Viliena for their

injuries have been recognized in Haitian Legal Proceedings.  [Stmt. 4] On July 21, 2015,  David

Boniface was awarded 1,100,000 Haitian gourdes ($17,496 USD) as reparation for the injury he

suffered following the death of his brother, Mr. Eclesiaste Boniface. [Stmt. ¶ 4].   Nissage

Martyr was awarded 1,000,000 gourdes ($15,905 USD) and Juders Yseme was awarded 900,000

gourdes ($14,315 USD) for injuries they suffered during the attack on the radio station in April

2008. [Stmt. ¶ 4].  These awards, although not entered against Mr. Viliena, were entered against

other Haitian citizens whom the Plaintiffs alleged were responsible for their injuries.  [Stmt. ¶ 4].

On April 30, 2018, the Defendant Jean Morose Viliena was found not guilty or

responsible for the allegations set forth in the Complaint. [Stmt. ¶ 5].

## IV. Argument

### A. Summary Judgment Standard

To defeat a motion for summary judgment, the non-moving party must demonstrate the

existence of a trial worthy issue as to some material fact. Cortés–Irizarry v. Corporación Insular

De Seguros, 111 F.3d 184, 187 (1st Cir.1997) citing Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir.1995).  Federal Rule of Civil Procedure 56(e)(1) states that in opposing summary judgment, an "affidavit must ... set out facts that would be admissible in evidence."  Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment. SEC v. Ficken, 546 F.3d 45, 53 (1st Cir.2008) citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)

    B.  The Defendant Did Not Commit Arson and Judgment Should Enter Dismissing Count V.

    Count V of the Complaint alleges that the Defendant is liable for arson under Haitian law. The Defendant has provided an affidavit establishing that he was not present in Les Irois on the date of the alleged arson and that he took no action to direct or encourage others to commit arson.  [Affidavit of Jen Morose Viliena.] To successfully refute these facts the Plaintiffs must submit admissible evidence that raises a genuine issue of material fact.  The Plaintiffs have been, to date, unable to adduce any such evidence in the course of discovery.  Absent such evidence, judgment should enter in favor of the Defendant dismissing Count V.

    C.  Adjudicative Comity/Exhaustion of Remedies

    The Plaintiffs have submitted an affidavit to the Court,  [Docket No. 20, Supplemental Brief Regarding Standing, Exhibit A,  Declaration of Mario Joseph, Attorney, (hereinafter "Joseph") in which in paragraphs 4 through 10 under the heading "The rights of my clients Mr. David Boniface, Mr. Nissage Martyr and Mr. Juders Yseme, to file a civil complaint against Defendant Viliena for their injuries have been recognized in Haitian Legal Proceedings," Joseph, p. 2, Mr. Joseph details the fact that under Haitian law a cause of action exists for the injuries alleged in the Complaint, Joseph, ¶ 5, that the Plaintiffs have recovered a monetary judgment against the "associates' identified in the Complaint for those injuries,  Joseph, ¶¶ 9, 10 and that

the Plaintiffs continue to prosecute their claims against Mr. Viliena in the Haitian court. Joseph, ¶ 8.

In his deposition the Plaintiff Juders Yseme testified that in this action he is seeking an award greater that the 900,000 gourdes ($14,315 USD) awarded to him in Haiti for the radio station attack. [Affidavit of Counsel, Ex. A., p. 33] The TVPA contains a specific provision requiring administrative exhaustion of remedies.  The specific purpose of the exhaustion provision was to ensure that the costs of entertaining a TVPA claim are imposed only when victims "are unable to obtain redress in the country where [the] torture took place." 134 Cong. Rec. 28,613-28,614 (1988) (Rep. Fascell).  The Plaintiffs have no such inability.  See Corrie v. Caterpillar, Inc., 403 F.Supp.2d 1019, 1025–26 (W.D.Wash.2005) (holding that TVPA plaintiffs had to exhaust available remedies in Israel: "A foreign remedy is adequate even if not identical to remedies available in the United States. Courts usually find a foreign remedy adequate unless it is 'no remedy at all.' ") (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).   Congress was clear in establishing the TVPA that "the bill recognizes as a defense the existence of adequate remedies in the country where the violation allegedly occurred," as this "ensures that U.S. courts will not intrude into cases more appropriately handled by courts where the alleged torture or killing occurred." H.R. Rep. No. 102-367, at 4--5 (1991).  Claims must be brought under the TVPA "as a last resort," after attempts to obtain local remedies have failed. S. Rep. No. 103-249, at 9 (1991); 134 Cong. Rec. 28611, 28614 (1988) (statement of Rep. Broomfield) (stating that, "as a last recourse to justice, [the TVPA] would then allow a person to turn to the Federal courts for help"); see generally Mohamad v. Palestinian Authority, 132 S. Ct. 1702, 1710 (2012) (noting that "[C]ongress appeared well aware of the limited nature of the cause of action it established in the [TVPA]").

Here, as evidenced by the testimony of Juders Yseme, the complaint of the Plaintiffs lies not with the unavailability of relief, but the nature of relief that was granted.  Mr. Yseme wants more money. [Affidavit of Counsel, Ex. A., p. 33]  Mr. Boniface wants "justice." [Affidavit of Counsel, Ex. B., pp. 56-57]  Both want Mr. Viliena to be included in the class of Defendants found liable. The TVPA, however, is a "last resort" not a mechanism, for the improvement of foreign awards, the translation of those awards into dollars commensurate with the United States economy or a foreign judgment collection mechanism.

The Court has previously observed that the Complaint is replete with allegations about the dysfunction of the Haitian judicial system. [Order on Motion to Dismiss, Docket No. 56, p. 20.]  This construct, however, presumes that the Defendant should be put to the test of proving out the suitability of the Haitian judicial system based on some international standard imposed by the Court in any case in which the personal injury alleged falls within the rubric of "torture." This is not a case specific inquiry, but rather one that implicitly disqualifies every action by a Haitian court whether or not it might match the standards of a United States court simply by reason of  alleged historic dysfunction.  In this case, by admission of the Plaintiffs own counsel, remedies are available and have been pursued.  The testimony of the Plaintiffs as to the monetary insufficiency offend every notion of international comity.

In some private international disputes, the prudent and just action for a federal court is to abstain from the exercise of jurisdiction. Turner Entm't Co. v. Degeto Film GmbH, 25 F.3d 1512, 1518 (11th Cir. 1994)  As the Supreme Court has articulated:

> 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the right of its own citizens, or of other persons who are under the protections of its laws.

6

Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

There are two forms of international comity, the first is legislative or 'prescriptive comity,' which guides domestic courts as they decide the extraterritorial reach of federal statutes, and the second is adjudicatory comity or "comity among courts," which is "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state. Mujica v. AirScan Inc., 771 F.3d 580, 598-99 (9th Cir. 2014).  In evaluating adjudicatory comity  the court considers three factors: (1) the interests of the United States; (2) the foreign state's interest; and (3) the adequacy of the foreign forum. Id. at 603-04.To consider the U.S. interests prong, the court looks at "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests." Id. at 604.    The Court in this case has already determined that the facts set forth in the Complaint do not touch or concern the United States and while the Complaint addresses issues of substantive international norms, it is primarily a Complaint that concerns two local tort actions that the Haitian courts have already addressed and entered judgment on.  As the factors guiding the Court's consideration of adjudicatory comity issues are non-exhaustive, the Court may also consider judicial economy and efficiency and fairness to the parties.  See, Lawson v. Klondex Mines Ltd., 450 F.Supp.3d 1057, 1076 (D. Nev. 2020).

In this case, it would be particularly unfair for the Court to revisit the determinations of the Haitian courts to impose its own judgment in circumstances in which relief is available in Haiti and has been entered by the Court there.  The Plaintiffs here unhappy with the results, financial and otherwise, seek to hold the Defendant liable under a different standard than his co-

defendants.  The Court should exercise adjudicatory comity and decline to exercise jurisdiction in this matter.

D.  Lack of Subject Matter Jurisdiction

Although the Court has previously given the issue of subject matter jurisdiction a thorough analysis (including a detailed review of Defendant's motion for reconsideration), the Defendant  incorporates those arguments [Dockets Nos. 47, 53, 67] by reference.  See, Pestube Sys., Inc. v. HomeTeam Pest Def., LLC, No. CV 05-2832-PHX-MHM, 2008 WL 11448028 at * 2. (D. Ariz. Mar. 31, 2008) (restatement of motion to dismiss for lack of subject matter jurisdiction appropriate at close of discovery).   The Plaintiffs proceed in this action on the contention that once Congress evinces an intent to govern behavior that does not touch or concern the United States, that there are no other constitutional limits and that the limitations of the Law of Nations as incorporated within the Constitution impose no barrier to the assertion of jurisdiction under 28 U.S.C. § 1331.  This construct would license Congress to pass laws governing any conduct between foreigners on foreign land and by doing do vest the Courts with jurisdiction to decide those issues.   This construct falls outside the bounds of both reasonableness and any boundaries of judicial restraint.  For the reasons previously stated, the Defendant renews its request for dismissal for lack of subject matter jurisdiction.

E.  Motion to Sever

On motion or on its own, the court may at any time sever any claim against a party. Fed. R. Civ. P. 21. District courts have "broad latitude" to sever claims. Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003). "The decision to separate parties or claims is a case management determination peculiarly within the discretion of the trial court." Id. (internal

quotation marks omitted). In determining whether to sever claims, a court considers numerous

factors, including:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Spinal Imaging Inc. v. State Farm Mut. Auto. Ins. Co., 2013 WL 1755200, at *4 (D. Mass. Apr.

24, 2013) (quoting Preferred Med. Imaging v. Allstate Ins. Co., 303 F. Supp. 2d 476, 477

(S.D.N.Y. 2004)).

In the event the Court dismisses Count V (Arson), the remining counts, the alleged killing

of Eclesiaste Boniface (Count I) in July, 2007 and the alleged shooting of Juders Yseme (Count

II) in April of 2008, consist of two separate incidents separated by 10 months and involving

different parties.  David Boniface was not a party or witness to the April, 2008 events.  There are

no common fact questions relating to the two incidents. Trying the matters as one unfairly

prejudices the Defendant by supporting the Plaintiffs unfounded and unsupported allegations that

the two distinct incidents were part of some grand scheme.  The Defendant asks that the Court

sever the matters and try the two counts as separate proceedings.

V.    <u>Conclusion</u>

Wherefore, for the foregoing reasons, the Defendant Jean Morose Viliena prays that the Court enter judgment in his favor on all Counts asserted in the Plaintiffs' Complaint, that, alternatively, the Court sever the trial of this action  and that the Court grant such other and further relief as is just.

Jean Morose Viliena,

By his attorney,

*/s/ Peter J. Haley*
Peter J. Haley (BBO# 543858)
*peter.haley@nelsonmullins.com*
Patrick T. Uiterwyk (BBO# 665836)
*patrick.uiterwyk@nelsonmullins.com*
Nelson Mullins Riley & Scarborough LLP
One Financial Center
Boston, MA 02111
p. (617) 217-4714
f. (617) 217-4710

Dated: March 28, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this date.

Date:    March 28, 2022                    */s/ Peter J. Haley*