UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID BONIFACE, NISSANDÈRE MARTYR, and JUDERS YSEMÉ, | * * * * | |
| Plaintiffs, | * | |
| v. | * * | Civil Action No. 17-cv-10477-ADB |
| JEAN MOROSE VILIENA, | * * | |
| Defendant. | * * | |

**MEMORANDUM & ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

## I.       INTRODUCTION

Plaintiffs David Boniface, Nissage Martyr[1], and Juders Ysemé (collectively, "Plaintiffs")

brought suit against Defendant Jean Morose Viliena ("Defendant" or "Viliena") under the

Torture Victim Protection Act ("TVPA"), the Alien Tort Statute ("ATS"), and for the crime of

arson under Haitian criminal law.  As alleged in the complaint, Defendant was, at various times

related to this action, the mayor and acting mayor of the town of Les Irois, located in Haiti.

Defendant is affiliated with the Haitian Democratic and Reform Movement party, and each

Plaintiff is, to varying degrees, affiliated with an opposition party, the Struggling People's Party.

Plaintiffs allege that, over the course of several years, Defendant was responsible for several

violent crimes, including the death of Plaintiff David Boniface's brother, Eclesiaste Boniface, an

_____

[1] The Court has since granted Plaintiffs' motion to substitute Nissandère Martyr, the son of
Nissage Martyr, to replace Nissage Martyr as Plaintiff.

attack in 2008 on a radio station in Les Irois affiliated with the Struggling People's Party, during which Nissage Martyr and Juders Ysemé were maimed, and a mass arson in 2009.

In its prior order granting in part and denying in part Defendant's motion to dismiss the complaint, [ECF No. 56], this Court found that it lacked jurisdiction over the ATS claim but that Defendant had not demonstrated that the Court lacked jurisdiction over the TVPA claims or that it could not exercise supplemental jurisdiction over the arson claim.  [Id. at 14–16].  The Court therefore dismissed the ATS claim but left intact Plaintiffs' claims brought under the TVPA and Haitian law.  [Id. ¶ 31].

Following the close of discovery, Defendant moved for summary judgment and to sever, [ECF No. 139], arguing that the Court should enter judgment in his favor because (1) there is no evidence that he committed arson or directed or encouraged others to commit arson, (2) Plaintiffs have failed to satisfy the TVPA's exhaustion requirement, (3) the Court should abstain from exercising jurisdiction for considerations of adjudicatory comity, and (4) the Court lacks subject matter jurisdiction.  [ECF No. 140 at 4–8].  Defendant further requested that if the Court grants summary judgment in his favor on the arson count (Count V), that it should also sever the count for the killing of Eclesiaste Boniface (Count I) from the shooting of Nissage Martyr and Juders Ysemé (Count II).  [Id. at 8–9].

Plaintiffs, in turn, moved for summary judgment on Defendant's affirmative defense of exhaustion, arguing that no reasonable factfinder could find that Plaintiffs have not satisfied the TVPA's exhaustion requirement.  [ECF No. 145 at 11–16].  Plaintiffs separately moved to strike a portion of Defendant's affidavit, which accompanied his memorandum of law in support of his motion for summary judgment, as conclusory and inconsistent with his prior testimony.  [ECF No. 156].

2

For the reasons set forth below, Defendant's motion for summary judgment and to sever, [ECF No. 139], is <u>DENIED</u>, and Plaintiffs' motions for partial summary judgment, [ECF No. 144], and to strike, [ECF No. 156], are <u>GRANTED</u>.

## II.      BACKGROUND & PROCEDURAL HISTORY

In the statements of facts supporting the cross-motions for summary judgment, the parties eschewed a recitation of the alleged underlying events that give rise to this lawsuit.  Nonetheless, the Court finds that a brief recital of the underlying actions provides helpful context when considering the pending motions, and therefore includes the following excerpt from its prior order on Defendant's motion to dismiss while expressly disclaiming any findings regarding the truth of the allegations.[2]

### Death of Eclesiaste Boniface, July 27, 2007

On the morning of July 27, 2007, Defendant was accompanying a sanitation crew through the streets of Les Irois when he got into a dispute with a resident, Ostanie Mersier, about the disposal of garbage.[3] After Defendant hit Mersier on the head with his gun, she left to file an incident report with the local Justice of the Peace, Judge Saint Bell, and Defendant followed her to demand her arrest.

As a trial monitor for a local human rights organization, Plaintiff Boniface came to observe the proceedings before Judge Bell. Boniface also spoke on Mersier's behalf and accused Defendant of abusing his authority by assaulting Mersier. As Boniface was leaving, he encountered Defendant, along with members of the KOREGA[4] militia, members of the mayoral staff, and two of Judge Bell's cousins. They surrounded Boniface and threatened him with violence, but a group of bystanders intervened and escorted Boniface to Plaintiff Martyr's home. Defendant and his associates followed Boniface and continued to threaten and attempt to hit Boniface

---

[2] In the narrative, "Plaintiff Martyr" or "Martyr" refers to Nissage Martyr, one of the original plaintiffs who was later replaced as plaintiff by his son, Nissandère Martyr, following Nissage's death two days after this lawsuit was filed.  <u>See</u> [ECF No. 56 at 27–31].

[3] At the time of this incident, Defendant was mayor of Les Irois.  [ECF No. 1 ¶¶ 28–29].

[4] Plaintiffs allege that KOREGA was a powerful political machine that exerted control over politics in the southwestern region of Haiti, including Les Irois, through a system of patronage, threats, and violence.  [ECF No. 56 at 2–3].  Plaintiffs further contend that Defendant, as a candidate and then as mayor of Les Irois, was backed by KOREGA and its militia.  [<u>Id.</u>].

until Defendant instructed his associates to let him go, because they would "take care of him later."

That evening, Defendant and an associate from the KOREGA militia appeared near Boniface's home. They ordered the residents in the area to remain behind closed doors and announced that later that night, the paramilitaries would appear and show no mercy. Later that evening, Defendant led a group of approximately twelve men from the KOREGA militia, armed with firearms, machetes, clubs, and picks, to Boniface's home. The group included members of the mayoral staff and Judge Bell's cousins. At that time, David Boniface was not at home, but was attending church. His younger brother, 23-year-old Eclesiaste Boniface, answered the door, and Defendant personally supervised as his associates dragged Eclesiaste into a crowd of about thirty bystanders. Eclesiaste pleaded with the crowd, saying that he was uninvolved and had no problems with anyone. Despite his pleas, Defendant's associates lunged at Eclesiaste with a machete, and then one of them fired his gun, killing Eclesiaste. Neighbors ran to David Boniface's church to warn him that Eclesiaste had been killed and that Defendant and the KOREGA militia were now looking for him. The church pastor sheltered Boniface overnight.

**Assault on Martyr and Ysemé, April 8, 2008**

In or around March 2008, a committee of local journalists and activists founded a community radio station in Les Irois called New Vision Radio, which was to be the first local radio station in the town. Radio serves as a primary news source in Haiti due to high rates of illiteracy. The radio station was financed and operated with support from two Struggling People's Party politicians. It rented a room from Plaintiff Martyr and operated out of his home. Throughout March and early April 2008, station volunteers ran test broadcasts to determine the reach of the signal. Plaintiff Ysemé, who was in high school at the time, enjoyed spending time at the station before and after class, though he was not employed by the station.

Defendant was opposed to the radio station, and on the day the station launched, in late March of 2008, Defendant called in to the station and declared his intent to shut the station down. On or about March 27, 2008, a group of government officials visited Les Irois to mediate the dispute between Defendant and supporters of the radio station. The delegation included the prosecutor from a neighboring city, as well as Haitian National Police and officers from the United Nations Stabilization Mission in Haiti. After the meeting, the officials instructed Defendant not to shut the radio station down, and he agreed.

On or about April 8, 2008, Defendant met a group of approximately 30 KOREGA militia members near Martyr's residence. Defendant distributed firearms to the militia members, some of whom also carried machetes, picks, and sledge hammers. Defendant's associates began firing in the air as they walked toward Martyr's house. Martyr and Ysemé were sitting on the front porch. Hearing the gunshots,

Ysemé ran through the house to the backyard. Martyr started to get up from the porch to go inside, seeking to protect his wife and daughters who were inside.

Defendant grabbed Martyr and dragged him down the hallway. Defendant pointed his handgun at Martyr's ear and told him to leave the house. Martyr refused to leave because his family remained in the house. Defendant shouted that Martyr wanted to stay so that he could report the attack. Defendant then swept Martyr's feet out from under him, forcing him to the floor. He started beating Martyr on his sides and chest, pistol-whipping Martyr with his gun and striking him with his fists. Several members of the KOREGA militia and the mayor's staff joined in the assault, Defendant struck Martyr hard in the chest, causing Martyr to collapse face forward. The militia members left Martyr on the floor and carried the broadcasting equipment out the door, at the direction of Defendant.

Meanwhile, a member of the KOREGA militia spotted Plaintiff Ysemé in the backyard. He accused Ysemé of wanting to report the attack, grabbed him, and dragged him into the house. One member of the militia restrained Ysemé as others beat him on his head and the sides of his body. Defendant, who was striking Martyr, turned to Ysemé and said that he "wanted him." While Martyr was lying on the floor in pain, he saw that the front door was open, and he ran to the doorway to escape. Ysemé, who had managed to slip free, followed him and ran toward the door. Some of Defendant's associates tackled Martyr as he tried to run. Ysemé ran past him, onto the street. Martyr broke free again and followed Ysemé onto the street. Seeing them trying to escape, Defendant ordered one of his associates, Villeme Duclona, to shoot and kill Martyr and Ysemé. Duclona opened fire with his shotgun, hitting Martyr in the leg and Ysemé in the face. Defendant and the KOREGA militia members then seized the rest of the radio equipment and fled the scene. They left Martyr and Ysemé for dead.

Martyr and Ysemé survived the attack, but both were left with severe, permanent injuries. Martyr spent several months in the hospital as a result of his wounds, and his injured leg was amputated above the knee. Ysemé also required months of intensive medical treatment, including two surgeries to extract shotgun pellets from his face. He is permanently blind in one eye and still has pieces of shotgun pellets in his scalp and arms. He continues to suffer from dizziness and migraine headaches as a result of his injuries.

**Arson of 36 Homes, October 29, 2009**

In or around January 2009, Defendant fled to the United States after Haitian authorities launched a criminal investigation into the killing of Eclesiaste Boniface and the attack on the radio station. Plaintiffs assert that he continued to hold the office of mayor and exercised control over the KOREGA militia from Massachusetts.

In or around October 2009, Hautefort Bajon, Defendant's Chief of Staff, fell ill. On October 27, 2009, KOREGA supporters, led by Defendant, who was then in Haiti, marched through the streets of Les Irois, threatening to kill people and burn down houses if Bajon died. Defendant publicly declared that the Struggling People's Party had placed a voodoo curse on Bajon. The next day, October 28, 2009, Defendant and members of the KOREGA militia, again marched through the streets. Bajon died on October 29. Shortly thereafter, Defendant went into the town market with several KOREGA associates and started to strike perceived supporters of the Struggling People's Party, accusing them of causing Bajon's death.

On the night of October 29, members of the KOREGA militia and mayoral staff, acting in concert with Defendant, set fire to 36 homes, all belonging to Struggling People's Party supporters, to avenge the death of Bajon. The homes of Martyr, Ysemé, and the Boniface family were burned and rendered uninhabitable.

Boniface v. Viliena ("Boniface I"), 338 F. Supp. 3d 50, 57–59 (D. Mass. 2018).  With that context, the Court turns to the facts relevant to the pending motions for summary judgment, which, unless otherwise noted, are undisputed.[5]

On July 28, 2007, the day after his brother, Eclesiaste Boniface, was killed, Plaintiff David Boniface filed a complaint with the Haitian authorities.  [ECF No. 148 ¶ 1].  Throughout 2007, 2008, and 2009, Plaintiffs filed several additional complaints regarding Eclesiaste Boniface's death, the 2008 attack on the radio station, and the 2009 mass arson with "(1) the prosecutors for Grand-Anse, (2) the Jérémie court of first instance, (3) the investigating judge for the civil court of Jérémie, (4) the Les Irois police precinct, and (5) the Jérémie office of the Haitian National Police."  [Id. ¶ 2].  Plaintiffs also filed reports with the "Inter-American Commission on Human Rights" and the UN peacekeeping mission in Haiti, also referred to as the MINUSTAH.  [Id. ¶ 3].

---

[5] The Court draws the facts from Plaintiffs' response to Defendant's statement of undisputed material facts filed in support of his motion for summary judgment, [ECF No. 153-1], Plaintiffs' statement of undisputed material facts in support of their partial motion for summary judgment, [ECF No. 148], and Defendant's response thereto, [ECF No. 151].  Together, along with the documents cited therein, these documents contain the parties' positions on the material facts.

On July 14, 2008, Defendant obtained lawful permanent resident status, which permitted him to travel to and reside in the United States.  [ECF No. 148 ¶ 4].  While Plaintiff was in Haiti in September 2008, he was arrested based on his alleged roles in the murder of Eclesiaste Boniface and the attack on the radio station.  [Id. ¶ 5].  After his release from custody, Defendant left Haiti and traveled to the United States on January 27, 2009.  [Id.¶ 6].  At some point between January and November 2009, Defendant returned to Haiti, but as of November 27, 2009, he was back in the United States and did not return to Haiti until August 20, 2012.  [Id. ¶¶ 6–7].

On January 25, 2010, while Defendant was in the United States, the Jérémie court of first instance issued an indictment in the Haitian criminal case involving the attack on the radio station and the killing of Eclesiaste Boniface.  [ECF No. 148 ¶ 9].  A bench trial on October 25, 2010, resulted in the conviction of six other defendants for their involvement.  [Id. ¶¶ 10–11].  Thereafter the Jérémie court stated that *in absentia* proceedings should be initiated against Defendant, but no such proceedings were ever held.  [Id. ¶ 11].

In August 2012, nearly two years after the Jérémie court bench trial, Defendant returned to Haiti at which time he was appointed to be the Interim Executive Agent ("IEA") of Les Irois by then-Haitian President Michel Martelly.  [ECF No. 148 ¶¶ 7–8].  After this appointment, Defendant continued to spend much of his time in the United States, but visited Haiti more often.  [Id. ¶ 12].  Since Defendant's term as IEA of Les Irois ended in 2015, he has visited Haiti "maybe three to four times."  [Id. ¶ 13 (quoting ECF No. 146-3 ("Viliena Dep.") at 27:14–22)].

In August 2013, during Defendant's term as IEA of Les Irois, the civil court in Jérémie convicted twelve defendants, including Defendant's father, for the 2009 mass arson in Les Irois, and awarded Plaintiffs damages.  [ECF No. 148 ¶¶ 12–13, 17].  Subsequently, in or around 2015, the Les Cayes Court of First Instance conducted judicial proceedings regarding the death of

Eclesiaste Boniface and the attack on the radio station, which Defendant did not attend.  [Id. ¶ 14].  On July 21, 2015, the Les Cayes court convicted five defendants for the charged offenses, awarded Plaintiffs damages, and stated that Defendant was a fugitive and, like the Jérémie court, ordered that *in absentia* proceedings be initiated against him.  [Id. ¶¶ 14–15, 18].  Plaintiffs aver that although they were awarded damages by the Jérémie and Les Cayes courts for the killing of Eclesiaste Boniface, the attack on the radio station, and the mass arson, they have not been able to recover any portion of the awards.  [ECF No. 148 ¶¶ 17–19].

Plaintiffs assert that no *in absentia* proceedings were initiated against Defendant by the Les Cayes court for the killing of Eclesiaste Boniface or the attack on the radio station, and further allege that no proceedings have been initiated against him for his role in the mass arson. [ECF No. 148 ¶¶ 11, 16, 20].  Defendant disputes this and asserts that he "has fully and freely participated in all judicial proceedings brought against him in Haiti" and that he "was exonerated in the case of the alleged arson in Haiti and found not responsible."  [ECF No. 151 ¶ 1]. Additionally, Defendant asserts that on April 30, 2018, after this lawsuit was filed, a Haitian court "entered judgment dismissing the claims against [him] for the allegation in the Complaint relating to the radio station attack and the death of Eclesiaste Boniface."  [Id. ¶ 2].

## III.     MOTION TO STRIKE

Because the motion to strike bears on the evidence to be considered when deciding the pending motions for summary judgment, the Court addresses it first.

### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the

matters stated."  When ruling on a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered."  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).  "If evidence cannot be presented in a form that would be admissible at trial, the court may not rely on it."  Facey v. Dickhaut, 91 F. Supp. 3d 12, 19 (D. Mass. 2014) (citing Fed. R. Civ. P. 56(c)(2)) (additional citations omitted).

"A motion to strike is the appropriate means of objecting to the use of affidavit evidence on a motion for summary judgment."  Facey, 91 F. Supp. 3d at 19 (citing Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994)).  The objecting party must "(a) apprise the trial court . . . that she considers the affidavit defective and (b) spell out the nature of the ostensible defects clearly and distinctly."  Perez v. Volvo Car Corp., 247 F.3d 303, 314 (1st Cir. 2001).  "Furthermore, a court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it."  Casas Office Machs., 42 F.3d at 682 (citation omitted).

### B.    Discussion

Plaintiffs argue that the Court should strike the second sentence of Defendant's affidavit, [ECF No. 152], because it is conclusory, contradicts his prior sworn testimony, and improperly attempts to offer expert testimony, [ECF No. 157 at 2–4].  The main thrust of Plaintiffs' argument, however, is that the disputed portion of the affidavit is excludable under the First Circuit's "sham affidavit rule" which provides that if "an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."  Flaherty v. Entergy Nuclear Ops., Inc., 946 F.3d 41, 50 (1st Cir. 2019) (alteration in original) (quoting Colantuoni v. Alfred Calcagni & Sons,

Inc., 44 F.3d 1, 4–5 (1st Cir. 1994)); see also Russell v. Acme-Evans Co., 51 F.3d 64, 67–68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."); Hackman v. Valley Fair, 932 F.2d 239, 241 (3rd Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").

During Defendant's deposition on November 1, 2021, he answered several questions about the 2008 attack on the radio station in Les Irois.  See [ECF No. 146-3 at 109–113]. Relevant here, Defendant was asked to identify who led the investigation into the attack, and he volunteered the following opinion: "In Haiti, everything that happens has to stay with politics. And any time that politics is involved in something, it's very difficult for the people to find justice . . . ."  [Id. at 112:20–24].  When subsequently asked about who he thought was responsible for the attack, he opined, "I believe that it's because of the weakness of the state that caused all the situation of Les Irois."  [Id. at 113:10–17].  After Plaintiffs moved for partial summary judgment on Defendant's affirmative defense of failure to exhaust under the TVPA, however, Defendant filed, on April 18, 2022, an affidavit to support his opposition in which he stated:

> [b]ased on my personal experience and public life in Haiti, I believe that the country of Haiti has a functioning and fair judicial system that has provided the Plaintiffs in this case, with a means to recover damages for any claims that can be proved against others.

[ECF No. 152 ¶ 6].

The issue is therefore whether Defendant's affidavit contradicts his earlier deposition testimony or, for example, merely clarifies ambiguities created by the deposition. Here, the Court finds that his affidavit is contradictory.

Although Defendant's deposition testimony was in response to questions about the attack on the radio station, he nonetheless offered his opinion that in Haiti, "everything that happens has to stay with politics" and "any time that politics is involved in something, it's very difficult for the people to find justice . . . ." [ECF No. 146-3 at 112:20–24]. Stated differently, he opined that it is very difficult for people to find justice in Haiti and blamed the events that occurred in Les Irois on the "weakness of the [Haitian] state . . . ." [Id. at 113:10–17]. That deposition testimony cannot be squared with his subsequent affidavit, which asserts that Haiti has a functioning and fair judicial system that provides Plaintiffs with a meaningful way to recover for their claims. [ECF No. 152 ¶ 6]. Moreover, having reviewed Defendant's deposition transcript, the Court concludes that Defendant's answers were unambiguous and not the result of an unclear question or confusion on his part. Defendant also does not offer any non-conclusory explanation for this apparent contradiction, and merely states that his beliefs are "[b]ased on [his] personal experience and public life in Haiti," which has involved "active[] participat[ion] in the civic and public life of Haiti." [Id.]. In the Court's view, these cursory and conclusory justifications do not explain the contradiction between his prior deposition testimony and his later filed affidavit, nor do they provide a sufficient factual basis for the statements included therein. Because the affidavit is contradictory and Defendant has not offered a satisfactory explanation for the contradiction, the Court will disregard this portion of his affidavit in considering the pending motions for summary judgment.

## IV.        MOTIONS FOR SUMMARY JUDGMENT

### A.        Legal Standard

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)) (further citation omitted). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. Plat 20, Lot 17, 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation

omitted).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (further citation omitted).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6.  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation[,]" Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### B.      Exhaustion Requirement Under the TVPA

Defendant and Plaintiffs have each moved for summary judgment on Defendant's affirmative defense that Plaintiffs' TVPA claims are barred for failure to exhaust adequate and available remedies in Haiti.  [ECF Nos. 139, 144].  Defendant argues that the evidentiary record reflects that Plaintiffs can obtain redress in Haiti and that such remedies are adequate.  [ECF No. 140 at 4–6].  Plaintiffs reject this and assert that, despite Defendant bearing the "substantial" burden to prove failure to exhaust, he has adduced no such evidence and therefore cannot succeed on this defense.  [ECF No. 145 at 5].

Pursuant to 28 U.S.C. § 1350(2)(b), a "court shall decline to hear a claim under [the TVPA] if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  "[T]he exhaustion requirement pursuant to the

TVPA is an affirmative defense, requiring the defendant to bear the burden of proof[,]" a burden that is "substantial."  Jean v. Dorelien, 431 F.3d 776, 781 (11th Cir. 2005) (citations omitted).  Moreover, the defendant must raise the defense "and must show that domestic remedies exist that the claimant did not use[]. . . [and] which have not been exhausted . . . ."  Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996).  In most instances, initiation of litigation under the TVPA "will be virtually prima facie evidence that the claimant has exhausted his or her remedies in the jurisdiction in which the [offenses] occurred."  Jean, 431 F.3d at 781–82 (quoting S. Rep. No. 102-249, at 9–10 (1991) (emphasis omitted)).  Additionally, other courts have "effectively waived" the exhaustion requirement "when 'it is apparent' that efforts to pursue the same relief in the home country 'would be futile.'"  Jane W. v. Thomas, 560 F. Supp. 3d 855, 875 (E.D. Pa. 2021) (quoting Doe v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 25 (D.D.C. 2005) and citing Rasoulzadeh v. Associated Press, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), aff'd, 767 F.2d 908 (2d Cir. 1985)).

The Court begins with Defendant's motion, which requires revisiting, briefly, Defendant's earlier motion to dismiss and this Court's order denying it.  In that motion, Defendant, relying heavily on an affidavit (the "Joseph Affidavit") filed by Mario Joseph, an attorney who represents Plaintiffs in their civil and criminal proceedings against Defendant in Haiti, [ECF No. 46 at 3, 11–12], argued that Plaintiffs had not properly exhausted adequate and available remedies in Haiti.  In the affidavit, Joseph states that "the rights of my clients . . . to file a civil complaint against Defendant Viliena for their injuries, have been recognized in Haitian legal proceedings."  [ECF No. 20-1 ¶¶ 4–13].  The Joseph Affidavit further states that Plaintiffs were awarded money damages in a suit against five of Defendant's associates, and that proceedings against Defendant are ongoing.  [Id. ¶¶ 7–9].  As the Court explained in its order on

the motion to dismiss, it found it appropriate to not consider the Joseph Affidavit because it was not referenced in the complaint, was filed months after the complaint pursuant to the Court's request, and because courts have generally declined to consider extrinsic evidence when a defendant moves to dismiss a claim under the TVPA based on failure to exhaust domestic remedies. Boniface I, 338 F. Supp. 3d at 65–66. The Court nonetheless went on to explain that even if it had considered the Joseph Affidavit, it would not have been sufficient evidence of failure to exhaust to satisfy Defendant's "substantial" burden of proof in light of the complaint's detailed allegations regarding the "dysfunction of the Haitian justice system, including descriptions of events in which individuals were targeted with threats, violence, and death for reporting a crime or participating in court proceedings." Id. at 66. The Court also noted that "[c]ourts have routinely found that threats of violent retaliation and allegations that a country's judicial system is corrupt or ineffective are sufficient to show that a plaintiff lacks effective domestic legal remedies." Id. (citation omitted).

With that brief recap, the Court turns back to Defendant's present motion, in which he again relies on the Joseph Affidavit to suggest that Plaintiffs have not exhausted adequate and available remedies in Haiti. In particular, he points to Joseph's statement that Plaintiffs were awarded a monetary judgment against Defendant's associates and that Plaintiffs continue to prosecute their claims against Defendant in Haitian courts. [ECF No. 140 at 4–5 (citing ECF No. 20-1 ¶¶ 5, 8–10)]. Defendant also references Juders Ysemé's deposition testimony, in which Ysemé testified that in this action he is seeking an award greater than the award entered in his favor by Haitian courts.[6] [ECF No. 140 at 5 (citing ECF No. 142-1 at 10)]. In Defendant's view,

---

[6] The relevant portion of Ysemé's deposition is excerpted here:

Q. How much was the amount that you were awarded [by a Haitian court]?

the fact that a Haitian court awarded Plaintiffs damages exemplifies their ability to obtain redress

in Haiti and supports his argument that Plaintiffs are merely dissatisfied with that relief, and are

seeking to use the TVPA to improve upon the foreign award.  [ECF No. 140 at 6].  Lastly,

although Defendant does not raise this point in his memorandum of law in support of his motion

for summary judgment in the context of exhaustion, he asserts in his statement of facts that on

April 30, 2018, he was found not guilty for the allegations set forth in the complaint.[7]  [ECF No.

---

> A. 900,000 gourdes.
>
> Q. And are those the same amounts that you're seeking in this action?
>
> A. No.
>
> Q. And what amounts are you seeking in this action?
>
> A. First of all, I'm seeking for justice, and after this, I'm seeking for reparation for money, and more money.
>
> Q. More money than the 900,000 gourdes that was awarded you [sic] in the Haitian court?
>
> A. Yes.
>
> Q. And you said that you were seeking justice.  What do you mean by that?
>
> A. I'm seeking for justice because until now, I'm not safe.  So from where the mayor is, he can call his men to act on his behalf.  He still communicates with his people.

[ECF No. 142-1 at 33:8–34:2].

[7] The Court notes that other than his own affidavit, the sole evidence to support Defendant's acquittal is a certified translation of the judgment that Defendant had prepared and then filed as an attachment to his affidavit supporting his opposition to Plaintiffs' motion for partial summary judgment.  [ECF No. 152-1].  Having examined the certified translation, the Court finds that it is, at least in parts, incoherent and nonsensical.  For example, on the second page of the translation, the purportedly translated text states that the "[n]ext several lines continue in [an] indecipherable manner . . . ."  [Id. at 4].  Also, the translation includes the following exchange between the prosecution and Defendant:

143 ¶ 5].  Notably, Defendant's statement of material facts filed in support of his motion

included only five paragraphs, three of which pertained to exhaustion.  [ECF No. 143].

Plaintiffs dispute each aspect of Defendant's arguments and contend that Defendant has

not met his "substantial" burden to prove failure to exhaust.  [ECF No. 153 at 11–12].  In

opposing Defendant's motion, Plaintiffs highlight evidence that suggests that the Haitian

proceedings have been inconsistent and fraught with personal risk, including that (1) as of the

date this lawsuit was filed, Defendant had never engaged in any Haitian legal proceedings related

to the death of Eclesiaste Boniface, the 2008 attack on the radio station, or the 2009 mass arson,

[ECF No. 153-1 at 6–7 (citing ECF No. 147-1 (Expert Report of Brian Concannon Jr.

("Concannon Rep.")) ¶ 111)]; (2) that although they have pursued legal remedies in Haiti, and

have been awarded damages, they have never been able to recover any portion of the damages

awards, [id. at 5 (citing ECF No. 154-8 ("Ysemé Dep.") at 23:17–24:6, 75:11–80:8, 84:14–

---

Q- Do you know that there will be a mess in the high school?

A- No Commissioner

Q- Can you tell us what happened?

A- It was while I was in high school that a student entered the high school yard
with a gun

[Id.].  As this translation is offered by Defendant as evidence that he was acquitted of the killing
of Eclesiaste Boniface and the attack on the radio station while he was mayor of Les Irois, it
seems unlikely that the prosecution would ask Defendant about his recollection of a "mess" at
his high school when he was a student and yet fail to ask him about the killing or the radio
station attack.  In any event, even if the translation was not so flawed, it would not constitute
undisputed evidence that Defendant was found not guilty or was not responsible for the
allegations set forth in the complaint, because Plaintiffs, as discussed below, have introduced
substantial evidence that Defendant was responsible for those acts as well as expert testimony
that the 2018 acquittal "was the result of either a corrupt decision or willful disregard for judicial
standards[.]"  See [ECF No. 153-1 at 9 (quoting Concannon Rep. ¶ 121–22)].

88:8]); ECF No. 154-1 ("Boniface Dep.") at 54:12–56:20, 94:6–96:3)]; (3) that despite two

separate courts stating that *in absentia* proceedings should be instituted against Defendant, none

were held, [ECF No. 153-1 at 5 (citing ECF No. 154-1 ("Boniface Dep.") at 54:12–56:20, 94:6–

96:9)]; see also [Concannon Rep. ¶ 111–13]; and (4) that they, as well as other witnesses, have

been threatened for attempting to pursue claims against Defendant, [ECF No. 153-1 at 8 (citing

Boniface Dep. at 43:8–23, 71:21–73:4, 96:11–103:12, Ysemé Dep. at 98:18–107:4, ECF No.

154-10 ("LaGuerre Dep.") at 15:2–27:15, ECF No. 154-14 ("Larrieux Dep.") at 34:2–41:10)].

Based on the specific factual evidence Plaintiffs cite, the Court easily concludes that they

have raised a genuine dispute as to whether the exhaustion requirement is satisfied, and therefore

DENIES Defendant's motion for summary judgment as to his affirmative defense.

In Plaintiffs' motion for partial summary judgment, they marshal much of the evidence

discussed above to argue that no reasonable factfinder could find in Defendant's favor on the

affirmative defense of exhaustion.  Plaintiffs contend that despite Defendant bearing the

"substantial" burden to prove his affirmative defense, he has not adduced evidence sufficient to

show that Plaintiffs failed to exhaust local remedies in Haiti, that the uncontroverted evidence

shows that Plaintiffs attempted to pursue local remedies despite Defendant's ability to evade

justice, and that even if there were a dispute as to whether Plaintiffs sufficiently exhausted local

remedies, there is undisputed evidence that remedies in Haiti are "ineffective, unobtainable,

unduly prolonged, inadequate, and obviously futile."  [ECF No. 145 at 5–6].

As discussed above, although a court must decline to hear a TVPA claim if the claimant

has not exhausted adequate and available remedies in the country where the alleged offenses

occurred, this exhaustion requirement may be waived where it is apparent that efforts to pursue

relief in the plaintiff's home country would be futile because of, for example, the ongoing risk of

retaliation or evidence of the instability of local judiciaries.  Jean, 431 F.3d at 783 (ongoing risk

of retaliation excuses exhaustion); Ahmed v. Magan, No. 2:10-cv-00342, 2011 WL 13160129, at

*5 (S.D. Ohio Nov. 7, 2011) (inadequate legal remedy in domestic forum excuses exhaustion);

Mushikiwabo v. Barayagwiza, No. 94-cv-03627, 1996 WL 164496, at *2 (S.D.N.Y. Apr. 9,

1996) ("Plaintiffs have fulfilled the exhaustion requirement of the TVPA by demonstrating that

the Rwandan judicial system is virtually inoperative and will be unable to deal with civil claims

in the near future." (citation omitted)).

  Here, the Court finds that Plaintiffs have satisfied the exhaustion requirement and that

Defendant therefore cannot succeed on his affirmative defense.  Through discovery, Plaintiffs

have substantiated allegations raised in the complaint that domestic remedies against Defendant

are foreclosed due to the weakness, politicization, and corruption of the Haitian justice system

and because Plaintiffs and potential witnesses are subject to an ongoing risk of retaliation for

attempting to pursue remedies in Haiti.  This was largely accomplished through the submission

of the expert report of Brian Concannon Jr. (the "Concannon Report"), which finds, in pertinent

part, that Plaintiffs have no meaningful access to remedies in Haiti and face retributive violence

for seeking justice domestically.[8]  [ECF No. 147-1 ¶¶ 24–31, 34–50, 67–97].  Plaintiffs have also

---

[8] In Defendant's opposition, he argues that the Concannon Report is not appropriately before the
Court on summary judgment.  [ECF No. 150 at 5–6].  The Court disagrees.  Plaintiffs assert, and
Defendant does not dispute, that Mr. Concannon was timely disclosed as an expert pursuant to
Fed. R. Civ. P. 26(a)(2).  [ECF No. 145 at 9–10].  Despite this disclosure, Defendant did not
depose Mr. Concannon and has not moved, pursuant to Daubert v. Merrell Dow Pharms., Inc.,
509 U.S. 579 (1993) or Rule 702 of the Federal Rules of Evidence, to strike or exclude any
portion of Mr. Concannon's report.  The only argument Defendant makes in his opposition is
that "[p]resenting selective information and ad hominem anecdotes in the manner set forth in Mr.
Concannon's report falls far short of both the standard for admissibility and any aim of
accurately describing the quality of justice rendered in any particular case."  [ECF No. 150 at 5].
That argument, however, which only refers generally to the Concannon Report, does not assert
that Mr. Concannon lacks expert or specialized knowledge that would help the factfinder, that
any particular content in the report lacks sufficient facts or data, that specific testimony is the

submitted deposition testimony and declarations from numerous witnesses, including but not limited to the named plaintiffs, attesting to ongoing threats and retaliation they have suffered and continue to suffer resulting from their attempts to pursue justice against Defendant.  [ECF No. 153-1 at 8].  In contrast, Defendant has offered no evidence that genuinely disputes Plaintiffs' evidence regarding the weakness of Haiti's judicial system or Plaintiffs' risk of retribution for pursuing claims against him.  Defendant's best evidence is that Plaintiffs' right to file a civil complaint against him has been recognized and that Plaintiffs were awarded damages.  That Plaintiffs may legally file a claim against Defendant, however, does not establish that the judicial system is actually functioning in a meaningful way.  Similarly, that Plaintiffs were awarded damages does not demonstrate the adequacy of remedies in Haiti as Plaintiffs have offered substantial evidence that they have not been able to recover any such damages and that, as of the date this lawsuit was filed, Defendant had not engaged in any legal proceedings in Haiti.[9]

---

product of unreliable principles and methods, or that Mr. Cannon did not reliably apply those principles and methods to the facts of this case.  In other words, Defendant has failed to properly object to the Court's reliance on the Concannon Report and therefore the Court may consider it when ruling on Plaintiffs' motion for summary judgment.

[9] The Court does not credit Defendant's assertion in his responsive statement of material facts and supporting affidavit that he "has fully and freely participated in all judicial proceedings brought against him in Haiti[,]" [ECF No. 151 ¶ 1]; see also [ECF No. 152 ¶ 2], because this conclusory assertion is contrary to undisputed record evidence.  In Plaintiffs' statement of undisputed material facts, they assert that Defendant did not attend the bench trial in Jérémie on October 25, 2010, [ECF No. 148 ¶ 10], or appear before the Les Cayes court on July 21, 2015 when it convicted other individuals for their roles in the killing of Eclesiaste Boniface and the attack on the radio station, declared that Defendant was a fugitive and ordered *in absentia* proceedings be initiated against him, [id. ¶¶ 14–15].  In Defendant's response, he did not dispute the paragraphs in which those statements were made.  See [ECF No. 151 (disputing only paragraphs 16 and 20 of Plaintiffs' statement of facts)].  Defendant further does not dispute the asserted material fact that he left Haiti for the United States on November 27, 2009 and did not return until August 20, 2012, meaning that he could not have attended the Jérémie bench trial in October 2010.  Compare [ECF No. 148 ¶ 7; ECF No. 146-4 at 3] with [ECF No. 151 at 1–2].  Similarly, he does not dispute Plaintiffs' evidence that he could not have attended the July 2015 hearing because his passport reflects that he left Haiti on March 25, 2015 and did not return until

Moreover, Defendant has offered no evidence to dispute that Plaintiffs and other witnesses face retribution for attempting to pursue claims against him.[10]  The Court thus concludes that no reasonable factfinder, upon examining the record before the Court, could conclude that Defendant had carried his substantial burden to prove failure to exhaust.  Plaintiffs' partial motion for summary judgment on Defendant's affirmative defense of exhaustion, [ECF No. 144], is therefore GRANTED.

### C.      Defendant's Motion for Summary Judgment as to the Arson Claim

Defendant has separately moved for summary judgment on Plaintiffs' claim for arson, arguing that the Court should grant summary judgment based on Defendant's affidavit, which states that he was not in Les Irois on the date of the mass arson and that he "took no action to direct or encourage others to commit arson."  [ECF No. 140 at 4].  He further contends that Plaintiffs have failed to adduce any admissible evidence to refute the statements in his affidavit.  [Id.].  The Court disagrees.  Relevant here, Plaintiffs have introduced the testimony of Plaintiff Juders Ysemé and a third-party witness who "both saw and overheard Defendant's associates speaking with Defendant via cell phone" and heard Defendant "provide[] direction to his associates . . . regarding which homes to burn down and requested updates on which homes had been torched."  [ECF No. 153 at 10 (citing ECF No. 154-8 ("Ysemé Dep.") at 25:11–30:23,

---

July 2, 2016.  Compare [ECF No. 148 ¶ 14; ECF No. 146-4 at 8] with [ECF No. 151 at 1–2].  Plaintiffs' specific factual evidence that Defendant did not attend the proceeding before the Jérémie or Les Cayes courts is therefore uncontroverted but for Defendant's affidavit, which was filed in opposition to Plaintiffs' motion for summary judgment.  On this record, the Court finds that no factfinder could reasonably conclude that Defendant attended or otherwise participated in these hearings and that his affidavit is therefore insufficient to defeat summary judgment.

[10] The Court further rejects Defendant's argument that the Court transfer the burden of proof on the affirmative defense of exhaustion from Defendant to the Plaintiffs because that proposal is clearly contrary to well-established law.  See Boniface I, 338 F. Supp. 3d at 64–65 (quoting Dorelien, 431 F.3d at 781).

74:2–75:1 and ECF No. 154-9 (Mers Ysemé Dep.) at 66:11–67:13)].  The Court finds this evidence sufficient to create a genuine dispute of fact as to the arson claim, which prohibits the grant of summary judgment in Defendant's favor.[11]  Defendant's motion for summary judgment as to the arson claim is therefore <u>DENIED</u>.  Accordingly, Defendant's motion to sever, which was premised on the Court granting summary judgment in favor of Defendant on the arson claim, is also <u>DENIED</u> as moot.

### D.      Defendant's Comity Defense and the Court's Subject Matter Jurisdiction

In his motion for summary judgment, Defendant raises arguments that have been previously considered and rejected by this Court.  Specifically, Defendant contends that this Court should abstain from exercising jurisdiction based on the principle of comity and, alternatively, that it lacks subject matter jurisdiction.  [ECF No. 140].

As Plaintiffs note, this is the third time that Defendant has asked the Court to dismiss their claims on comity grounds.  <u>See</u> [ECF No. 153 at 7, 11].  Ruling on Defendant's motion to dismiss, in which Defendant's comity argument was limited to a single sentence, the Court determined that "[t]he mere existence of parallel foreign proceedings does not negate the district courts' virtual unflagging obligation . . . to exercise the jurisdiction given them . . . ."  <u>Boniface I</u>, 338 F. Supp. 3d at 70 (internal quotation marks and citations omitted).  Defendant then revised his comity argument to recast it in terms of prescriptive comity, arguing that the exercise of jurisdiction would be "inconsistent with . . . the statutory intent and limits of the TVPA."  [ECF No. 67 at 10].  The Court again rejected his argument and noted that he had not cited "any case

---

[11] Without explicitly raising the argument, Defendant appears to suggest that the evidence tending to show his involvement in the mass arson is not admissible and therefore cannot be relied on by the Court in ruling on his motion for summary judgment.  To the extent Defendant made this argument, it is rejected because, to begin, Defendant did not raise any specific arguments as to why the evidence should be excluded and, in addition, the Court finds that evidence relied on by Plaintiffs is likely subject to various exceptions to the rule against hearsay.

in which a court has accepted this argument or dismissed a TVPA claim on comity grounds" and reaffirmed its conclusion "that Congress intended the TVPA to have an extraterritorial application . . . ." Boniface v. Viliena ("Boniface II"), 417 F. Supp. 3d 113, 121–22 (D. Mass. 2019).

Defendant has once again repackaged his comity argument, and now contends that the Court should abstain from exercising jurisdiction as a matter of adjudicatory comity, sometimes referred to as "comity among courts," which Defendant notes is an entirely discretionary act. [ECF No. 140 at 7]. The Court again rejects Defendant's request. First, the Court declines to abstain as a matter of discretion because it has been more than five years since this lawsuit was filed, the parties have engaged in extensive discovery, the trial date is soon approaching, and electing to decline jurisdiction at this point would be deeply prejudicial and an enormous waste of judicial resources. Second, even applying the out-of-circuit legal framework that Defendant proposes, see Mujica v. AirScan Inc., 771 F.3d 580 (9th Cir. 2014), the Court finds its exercise of jurisdiction appropriate. In Mujica, the Ninth Circuit stated, in discussing adjudicatory comity, that "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." Id. at 599 (quoting JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C. V., 412 F.3d 418, 424 (2d Cir. 2005)) (alteration in original). Defendant's argument for comity thus fails at the first hurdle as Defendant has not adduced any evidence to suggest that the foreign proceedings would be procedurally fair and the overwhelming weight of evidence introduced by Plaintiffs compels the opposite conclusion. Even the certified translation that Defendant points to as evidence of his acquittal in Haiti casts doubt on the procedural fairness of Haitian courts as it appears that no witnesses were summoned or testified and no questions were asked about the

charged offenses.  Defendant's request that the Court abstain based on comity is therefore

<u>DENIED</u>.

Defendant's motion is also <u>DENIED</u> to the extent it requests the Court to dismiss the case

for lack of subject matter jurisdiction.  As Defendant even acknowledges, "the Court has

previously given the issue of subject matter jurisdiction a thorough analysis," [ECF No. 140 at

8], and has concluded that it has subject matter jurisdiction.  The Court's prior holding is the law

of the case, and the Defendant offers no reason why the Court should revisit its ruling.

## V.      CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment and to sever, [ECF

No. 139], is <u>DENIED</u>, Plaintiffs' motion for partial summary judgment, [ECF No. 144], is

<u>GRANTED</u>, and Plaintiffs' motion to strike, [ECF No. 156], is also <u>GRANTED</u>.

**SO ORDERED.**

February 7, 2023

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
 U.S. DISTRICT JUDGE
