UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID BONIFACE, NISSAGE MARTYR and JUDERS YSEMÉ <br><br> Plaintiffs, <br><br> v. <br><br> JEAN MOROSE VILIENA <br><br> Defendant. | Civil Action <br> No. 17-10477-ADB |

DEFENDANT JEAN MOROSE VILIENA'S
MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL AND REMITTITUR

The Defendant Jean Morose Viliena ("Defendant") submits this memorandum of law in support of the Renewed Motion of Defendant Jean Morse Viliena for Judgment as Matter of Law for a New Trial and Remittitur.

## I. Introduction

This is an action by two Haitian citizens and the estate representative of a third Haitian citizen to recover civil damages for torts allegedly committed in Haiti in the period 2007-2009. The Jury returned a Verdict on March 21, 2023 [Docket No. 250] finding the Defendant liable to the Plaintiffs under the Torture Victim Protection Act and not liable for arson under the law of Haiti. The Court entered judgment on April 12, 2023 [Docket No. 260]. The Defendant renews his motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and moves for a new trial Fed. R. Civ. P. 59(a).

## II.     Applicable Standard [Rule 50(b)]

When deciding a Rule 50(b) motion the Court must grant the motion if it finds that the evidence is such that reasonable persons could not have reached the conclusion that the jury reached even when taking the facts and the reasonable inferences therefrom in the light most hospitable to the jury's verdict.    Casillas–Díaz v. Palau, 463 F.3d 77, 79 (1st Cir.2006).    The Court may grant a motion for a new trial under Fed. R. Civ. P. Rule 59 if its finds that  the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.  Id. at 81.

## III.    Torture Victim Protection Act

### A.  Radio Station Attack

#### 1.  No secondary liability

There is nothing in the  language of the TVPA [Torture Victim Protection Act, Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350, note) (the "TVPA")]  that permits the establishment of secondary liability. Mastafa v. Chevron Corp., 759 F.Supp.2d 297, 300 (S.D.N.Y. 2010)  The Supreme Court has adopted a default rule that provides that absent express statutory provision, secondary liability cannot be imposed on others. Id. citing Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164, 182, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.").  The TVPA contains no express statutory language imposing liability on aiders and abettors.

#### 2.  The TVPA provides no remedy for attempted extra judicial killing

The plain language of the TVPA does not contemplate an "attempted" extrajudicial killing as a recoverable offense. See, Moskal v. United States, 498 U.S. 103, 108 (1990) (in determining the meaning of a statutory provision, courts "look first to its language, giving the words used their ordinary meaning"). See also, Appel v. Hayut et al. Civil Action No. 20 Civ. 6265 (JPC), June 30, 2021, 2021 WL 2689059 (S.D.N.Y. 2021)   Similarly, while the TVPA provides for recovery by third parties for an "extrajudicial killing" it makes no such provision for recoveries for torture. Doe v. Qi, 349 F. Supp. 1258 (N.D. Cal. 2004).

### 3. *Defendant had no control over the principal actor*

The evidence presented at trial viewed in the light most favorable to the Plaintiffs established that Vileme Duclona was the shooter involved in the attack on the radio station in April, 2008. To find the Defendant liable the jury must have found that the Defendant had the ability to control the alleged third party actors. See, Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1289 (11th Cir. 2002). The Court's instruction to the jury on issue of directing or ordering was as follows:

> 1. That a superior-subordinate relationship existed between Defendant Viliena and the person or persons who committed the wrongful acts such that the Defendant had the authority to give that person or persons an order;
>
> 2. That Defendant gave a direction or an order, which had a substantial effect on the commission of the wrongful acts; and
>
> 3. That Defendant knew, or, in light of the circumstances at the time, should have known of the substantial likelihood that the wrongful acts would be committed following his direction or order.

[Transcript ("Tr."), March 20, 2023, p. 27 l.17 – p. 28, l. 2]

With respect to the first element the Court further instructed the jury as follows:

> The first element requires the existence of a superior-subordinate relationship between Defendant Viliena and the person or persons who committed the wrongful acts. To establish this element, Plaintiffs must prove, by a preponderance of the evidence, that

3

> Defendant Viliena was in a position of authority that could compel another to commit the wrongful acts at Defendant's direction or order. Plaintiffs are not required to prove the existence of a formal superior-subordinate relationship between the Defendant and the person or persons who committed the wrongful acts. The superior-subordinate relationship may be informal or of a temporary nature. To determine whether such a relationship existed in this case, you should consider the circumstances and the perception of the relationship from the perspective of the person receiving the direction or order.

[Tr. March 20, 2023, p. 28 l.3-17]

"To determine whether such a relationship existed in this case, you should consider the circumstances and the perception of the relationship from the perspective of the person receiving the direction or order." Id. There was no testimony or evidence regarding the relationship between the Defendant and Vileme Duclona, beyond the Defendant's acknowledgment that he knew Duclona as someone who lived in Les Irois and the testimony of the Plaintiffs that Duclona was often seen in the presence of the Defendant and as such was regarded by them as part of the Defendant's "crew."

Other than the testimony that Mr. Duclona was sometimes seen in the vicinity of the Defendant there was no evidence from which the jury could find that the Defendant had the ability to control or direct the actions of Mr. Duclona or that the Defendant otherwise took actions consistent with the requirements to establish solicitation, conspiracy or aiding and abetting liability. Cabello v. Fernandez–Larios, 402 F.3d 1148 (11th Cir.2005); Garcia v. Chapman, 911 F. Supp. 1222, 1237 citing In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig., 792 F.Supp.2d 1301, 1343-44. (S.D.Fla.2011).

Mere association between the principal and those accused of aiding and abetting is not sufficient to establish guilt, US v. Tarr, 589 F.2d 55 (1st Cir.1978) citing Ramirez v. United States, 363 F.2d 33, 34 (9th Cir. 1966); United States v. Joiner, 429 F.2d 489, 493 (5th Cir. 1970);

4

nor is mere presence at the scene and knowledge that a crime was to be committed sufficient to establish aiding and abetting. Id.

There was no evidence presented to the jury from which it could reasonably find that a superior/subordinate relationship existed between the Defendant and the shooter Duclona or that the actions of Duclona resulted from any direction or order initiated by the Defendant.

    3.    *The Facts Presented at Trial Would Not Otherwise Permit a Jury to Reasonably Find that the Defendant was Secondarily Liable.*

Aiding and abetting liability requires a showing of "knowing substantial assistance" to the person or persons who committed the wrongful act. Halberstam v. Welch, 705 F.2d 472 (D.C.Cir.1983). There were no facts presented to the jury from which it could reasonably find that the Defendant had the requisite knowledge of the act and provided substantial assistance. The Defendant had no connection to the victims, who were both unaffiliated with any political party nor advocating any political cause. There was no evidence that either the Defendant or Duclona engaged in any planning with respect to the event.

With respect to the elements of conspiracy the Court instructed the jury that a conspiracy requires:

1. That two or more persons agreed to commit a wrongful act;

2. That Defendant Viliena joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it; and

3. That one or more of the alleged wrongful acts was committed by someone who was a member of the conspiracy and acting in furtherance of the conspiracy.

[Tr. March 20, 2023, p. 31 l.10-17]

There was no evidence as to any of these elements and indeed in closing Plaintiffs' counsel acknowledged the same asserting not that the Defendant was engaged in a political action or

vendetta but that he had engaged in the "the conduct of a petty tyrant who takes something that is not a threat at all but blows it out of proportion and overreacts." [Tr. at p.101, March 20, 2023, l. 24- p.102, l. 1]   A conspiracy requires that the evidence provided would allow the jury to establish when and where the parties to the conspiracy reached agreement and the nature of the agreement.  See,   Garcia v. Chapman, 911 F. Supp. 1222, 1237 citing Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252, 1268 (11th Cir.2009) (plaintiffs failed to allege 'when or with whom the [management] entered into a conspiracy to arrest, detain and harm the plaintiffs, failed to define the "scope of the conspiracy and its participants, and did not allege that the treatment the plaintiffs received at the hands of the local police and in prison was within the scope of the conspiracy.)  There was no evidence presented from which a jury could reasonably establish that a conspiracy existed.

### B. Death of Eclesiaste Boniface

In their Complaint in this action, the Plaintiffs alleged that one of the Defendant's associates killed Mr. Boniface. [Complaint, ¶ 36].  At trial, the evidence presented by the Plaintiffs was contradictory.   One witness, Osephita LeBon, testified that the Defendant was the shooter, the other, Mers Yseme, testified that Hautefort Bajon, was the shooter.  The Plaintiffs endorsed neither view.  There was no evidence presented from which the jury could reasonably determine the identity of the shooter.

### C. Lack of State Action

The Plaintiffs theory of recovery as presented to the jury in their opening was  focused on a scheme of political dominance carried out against members of a competing political party, OPL, the Struggling People's Party.    The evidence presented at trial, however, supported no part of this theory. The evidence presented at trial established that none of the Plaintiffs was a

6

member of OPL at the time of the alleged incidents and there is no evidence whatsoever that they had any control or dominance over the organization that would allow a reasonable jury to conclude that the Defendant acted in furtherance of a political scheme.  Indeed at closing, the Defendant was characterized not as a political actor but as a thin-skinned and petty person who had overreacted.   Whether or not that theory is a viable one, it is not one in which a reasonable jury could find that the Defendant was a state actor.

To determine whether a defendant acted under color of foreign law, the Court looks to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983." Chowdhury v. Worrldtel Bangladesh Holding, Ltd. 746 F.3d 42, 52 (2d Cir. 2014) citing  Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir.1995). Under those principles, "[f]or purposes of the TVPA, an individual acts under color of law ... when  he acts together with state officials or with significant state aid." Id. at 52-53, citing Khulumani v. Barclay Nat. Bank Ltd., 504 F.3d 254, 260 (2d Cir.2007) (per curiam) (internal quotation marks omitted), aff'd for want of a quorum sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza, 553 U.S. 1028, 128 S.Ct. 2424, 171 L.Ed.2d 225 (2008). "[T]o state a claim under the TVPA, [plaintiff] must adequately allege that the defendants possessed power under [foreign] law, and that the offending actions ... derived from an exercise of that power, or that defendants could not have undertaken their culpable actions absent such power." Id.

"[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it to state action...." Estate of Manook v. Research Triangle Institute, Intern.,759 F. Supp. 2d 674, 679 (E.D.N.C. 2010) quoting Philips v. Pitt County Mem'l Hosp., 572 F.3d 176, 181 (4th Cir.2009) Id. at 181 .  The factors to be considered include whether the actions "resulted from the state's coercive power, whether the state

7

provided significant encouragement, either overt of covert, whether the private actor operated as a willful participant in joint activity with the state, whether the private actor is controlled by an agency of the state, whether the private actor was delegated a public function, and the degree of public entwinement between the state and the private actor." Id. at 679-680.   The Court's instructions to the jury provided that:

> Acting "under color of law" means that a person is acting or purporting to act in the performance of his official duties.  Holding political office by itself is not necessarily enough to establish that.  The action must be cloaked with the authority of the government.  A person can act under "color of law" even when his actions overstep, or constitute an abuse of, his legal authority.

[Tr. March 20, 2023, p. 22, l. 23- p. 23, l. 4]

The evidence presented at trial established that the Defendant was newly sworn into office at the time of the killing of Eclesiaste Boniface and as with the radio station attack the event took place amid a large group of people.  With respect to both acts, there was no evidence presented from which a jury could reasonably find that the actions resulted from some exercise of state power.  No jury could reasonably conclude that the Defendant was a state actor with respect to the actions complained of or that the acts could not have been accomplished absent the exercise of such power.  Both incidents involved a mob of people and there was no evidence presented that the assemblages were part of some state action.  There was no use of state force and no evidence whatsoever that the color of law of the Republic of Haiti played any material part.  As the Court acknowledged in its instructions, the fact that the Defendant served as Mayor did not convert every "petty" action or overreaction he took into an act under the color of law.  The TVPA has an extraordinary reach, but it is a reach expressly limited by the bounds of the acts of other governments, and does not encompass domestic crimes committed within a foreign nation.

## IV.     No Evidence that David Boniface is a Proper Party

Generally, state law should govern the assessment of liability under the TVPA and who is a proper plaintiff for purposes of recovery. See, Doe v. Drummond Co., 782 F.3d 576, 607 (11th Cir. 2015) ("international law does not set the standard for TVPA claims; instead, the TVPA should be interpreted through reference to its text, legislative history, and general principles of domestic law"). Massachusetts law does not permit recovery by siblings for wrongful death. Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 663–64 (2003). The Plaintiffs presented no evidence from which a jury could reasonably find that David Boniface is a proper claimant.

## V.     The Court Lacks Jurisdiction

The evidence at trial has established that the United States has no connection to these proceedings. The Defendant incorporates by reference those arguments, [Dockets Nos. 47, 53, 67], as to the Court's lack of jurisdiction as if fully set forth herein.

The legislative history of the TVPA indicates that it was meant to further define specific violations of the Law of Nations and to apply the rights arising under the Alien Tort Statute Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), to United States citizens. The Senate Report provided the following:

> The TVPA would provide [an explicit] grant [of a cause of action to victims of torture] and would also enhance the remedy already available under section 1350 in an important respect: while the **Alien Tort Claims Act provides a remedy to aliens only, the TVPA would extend a civil remedy also to U.S. citizens** who may have been tortured abroad. Official torture and summary executions merit special attention in a statute expressly addressed to those practices. At the same time, claims based on torture or summary execution do not exhaust the list of actions that may appropriately be covered by section 1350. Consequently, that statute should remain intact.

Sen. Rep. No. 102-249, at 3 (1991) [emphasis added].

9

The Court has dismissed the Plaintiffs' claim in this action under the ATS because they did not touch and concern the United States. The evidence adduced at trial confirmed that fact and the TVPA claim should be dismissed for lack of jurisdiction as well. Federal question jurisdiction, 28 USC § 1331, is not a statutory cure meant to exceed the bounds of the Law of Nations and license unlimited worldwide jurisdiction in any and all circumstances.

**VI.     Motion for a New Trial**

*A.     Applicable Standard*

The Court may grant a new trial if the jury's verdict is "against the weight of the evidence" or if "action is required to prevent injustice." Rodriguez-Valentini v. Doctor's Center Hospital (Manati), Inc. 27 F. 4th 14, 21 (1st Cir. 2022) quoting Jennings v. Jones, 587 F. 3d 430, 436 (1st Cir. 2009). The court need not take evidence in the light most favorable to the nonmoving party and can independently review the evidence. Id.

*B.     The Court Should Apply its Own Independent Judgment in Granting a New Trial*

In applying its own independent judgment to the question of state action and the other issues raised above, the Court should grant a new trial.

*C.     The Jury was Unfairly Influenced by Expert Testimony*

The Court issued its decision on pending summary judgments in this matter on February 7, 2023, three days prior to the deadline for motions in limine and subsequent to the identification of the Plaintiffs' proposed expert witnesses. Prior to the disposition of the summary judgment motions, Defendant reasonably anticipated that the experts, Robert Maguire and Brian Concannon, would be employed primarily to testify as to the efficacy of local remedies, which until February 7, 2023 remained an open issue. The Court's decision on the summary judgment motions [Docket No. 191] resolved that issue in favor of the Plaintiffs holding that local remedies were ineffective

and that the prior determinations of Haitian judicial authorities in favor of the Defendant were non-binding, although could still be used by the Defendant.  The Defendant addressed the issue at the final pre-trial conference on March 2, 2023 as it was not clear that the expert witnesses had any remaining utility in the case.  The Plaintiffs indicated their intent to continue to call the witnesses and the Court observed that the issue would be addressed when the witnesses were called.  The Defendant filed a written memorandum in opposition to the testimony of Robert Maguire [Docket No. 229].  The Court overruled that objection.

  Neither Mr. Maguire, nor Mr., Concanon had any particular knowledge about the venue of the facts in this matter, Les Irois, nor offered any testimony that directly related to the acts involved in this action.  Both witnesses, however, testified at length on political crime in Haiti and the offensive and insidious conduct of bad political actors.  In particular, both witnesses testified as to the malign influence of the political organization identified as Korega.   The testimony at trial, however, fell far short of establishing any connection between the Defendant and Korega.  The testimony provided by the Plaintiffs that people who were seen in the vicinity of the Defendant were wearing t-shirts bearing the name of Korega was both incredulous on its own and fell far short of establishing a viable factual connection between Korega and the Defendant.  Yet, the jury was subjected to hours of testimony centered on the bad acts of Korega and other malign political organization in the Republic of Haiti.  The import of this testimony on the jury unfairly influenced the jury.

  The Court may order a new trial "whenever, in its judgment, the action is required in order to prevent injustice." <u>Jennings v. Jones</u>  at 463; <u>Ins. Co. of N. America v. Musa</u>, 785 F.2d 370, 375 (1st Cir.1986).  The lengthy testimony of experts, while potentially relevant to the efficacy of the Haitian judgment in favor of the Defendant, was instead employed in a manner to

characterize Haiti and Haitian politicians as universally criminal. This unfairly, and wrongly, influenced the jury.

### D. The Plaintiffs' Closing Included Exculpatory Explanation not in Evidence

The Defendant in closing questioned the credibility of a witness, Juders Yseme, based, in part, on his testimony on direct examination that he was married and living apart from his wife as a result of the actions taken by the Defendant and his admission on cross-examination that he was not married. In the rebuttal portion of Plaintiffs' closing argument, counsel offered that "… its just a cultural thing. In Haiti you can have a wife. They call it a madam, your spouse. But they might not have a formal marriage ceremony." [Tr. at p. 100, l. 5-7]. Prejudicial statements made during closing militate in favor of reversal because they are the last words spoken to the jury by the trial attorneys. United States v. Manning, 23 F.3d 570, 575 (1st Cir. 1994). Statements made during rebuttal are particularly problematic because they are the last words the jury hears before commencing deliberations. United States v. Torres-Colon, 790 F.3d 26, 34 (1st Cir. 2015). In Defendant's closing counsel observed that Plaintiffs could not be bothered during the trial on re-direct examination to try and explain the discrepancy but just let the facts stand. In rebuttal, Plaintiffs improperly sought to supplement and correct the record by arguing facts that were not in evidence in a way that was unfair and unduly prejudicial.

### E. Remittitur

In the context for a motion for new trial under Fed. R. Civ. P. 59(a) the Court may remit a jury's damage award if it exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it. Trainor v. HEI Hosp., LLC, 699 F.3d 19, 29 (1st Cir. 2012); Perez–Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283 (1st Cir.1993).

The Plaintiff David Boniface recovered $17,496 in Haiti, Nissage Martyr recovered $15,905 and Juders Yseme recovered $14,315. These damages represented many multiples of their annual earnings. The Plaintiffs presented no evidence on damages. The jury awarded David Boniface $1,750,000, Juders Yseme, $1,250,000, and Nissandere Martyr as representative of Nissage Martyr, $1,500,000. Other than emotion and sympathy there was no basis whatsoever for the award of these amounts and they lack any basis in the evidence presented to the jury. The Plaintiffs presented expert testimony on the uncollectability of judgments entered in actions of this type, improperly imploring the jury to enter a judgment in a totemic amount, not aimed at compensating the Plaintiffs, but at sending a message.

Remittitur is appropriate when an award exceeds "any rational appraisal or estimate of the damages" that could be based upon the evidence before the jury. E. Mountain Platform Tennis v. Sherwin–Williams Co., Inc., 40 F.3d 492, 502 (1st Cir.1994) quoting Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir.1982). There was no evidence before the jury on any calculable damages and the amounts awarded out of notions of sympathy or message sending far exceed any rational calculation.

1. *Punitive Damages were Excessive.*

The TVPA does not provide for the recovery of punitive damages and absent an express provision for such recovery, punitive damages are not appropriate. See, Opati v. Republic of Sudan, __ U.S. ___, 140 S. Ct. 1601 (2020).

Punitive damage awards are limited by the Due Process Clause of the Fourteenth Amendment, prohibiting "grossly excessive" awards. Mendez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 47 (1st Cir. 2009) citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416–17, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); BMW of N. Am., Inc. v. Gore,

517 U.S. 559, 568, (1996). The $11 million awarded to the Plaintiffs in this action serves no deterrent effect, is grossly excessive and stands only as a symbolic gesture devoid of any recognizable or legitimate judicial purpose.

Wherefore, for the foregoing reasons, the Defendant Jean Morose Viliena prays that the Court enter judgment in his favor dismissing the claims against him in this action; alternatively order a new trial the claims under the Torture Victim Protection Act on which the jury has found him liable, enter an order reducing the judgment amounts entered against him and that the Court grant such other and further relief as is just.

Jean Morose Viliena,

By his attorney,

  /s/ Peter J. Haley
Peter J. Haley (BBO# 543858)
*peter.haley@nelsonmullins.com*
Nelson Mullins Riley & Scarborough LLP
One Financial Center
Boston, MA 02111
p. (617) 217-4714
f. (617) 217-4710

Dated: April 18, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date:   April 18, 2023            /s/ Peter J. Haley